# Sedgwick's Appeal.

If a *fieri facias* be issued and levied upon personal property, and the defendant give a bond to entitle him to a stay of the execution for one year in pursuance of the provisions of the Act of the 12th July 1842, and the same is so returned by the sheriff, and within the year an execution issue at the suit of another plaintiff, and the same property is levied and sold, the first execution will be entitled to the proceeds of the sale.

APPEAL from the ·decree of the Court of Common Pleas of *Dauphin* county.

P. C. Sedgwick, Esq. obtained two judgments, one against Elliott & M'Curdy, and the other against M'Curdy alone, upon which writs of *fieri facias* were issued and levied upon the defendants' personal property, describing it particularly.   At the defendant's request, the property was appraised in pursuance of the provisions of the Act of the 12th July 1842, and they gave bond to entitle them to a stay of proceedings for one year.   The property was exposed to sale, and would not bring two-thirds of its appraised price; all which was returned by the sheriff with his writs.   Three days before the year expired, the Harrisburg Bank issued a *fieri facias* against the same defendants, and levied upon the same property.   As soon as the stay of the first executions expired, the plaintiff, P. C. Sedgwick, issued writs of *vendi-*

*tioni exponas ;* and while all three writs were in the hands of the sheriff, he sold the property and brought the money into court for appropriation. It was there claimed by the respective execution creditors, and the court below was of opinion that the lien of the first executions was divested, and decreed the money to the Harrisburg Bank. From this decree Sedgwick appealed.

*Mr Kunkle* and *Mr Parke*, for appellants. By the terms and provisions of this Act of Assembly, it is perfectly manifest that its construction must be in favour of retaining the lien of the execution levied. It requires the officer to make return of a schedule of the property levied and appraised, or such part as shall not sell for two-thirds of its appraised value; and that the defendant shall give a bond with sureties for the faithful return of the property. Why all this, if the property be discharged from all lien of the execution the moment it is returned? But further, the plaintiff may at any future time offer the property for sale again and again until it brings two-thirds of its appraised value; and yet it is said the lien upon it is gone the moment it is returned by the sheriff; for if it be gone at all, it is gone then. This cannot be the proper construction of the Act; and what seems to us to be unanswerable is, that the property was delivered to the sheriff in pursuance of the bond given him. Cited, 1 *Penn. Pr.* 479. 491; 10 *Watts* 265. 480.

*Mr M'Cormick*, for appellee. A reference to the peculiar terms and provisions of this Act of Assembly seems to us to lead to a different construction from that contended for by the appellant. One of the prominent features of the Act is that the bond shall be conditioned for the return of the property, *or of property of equal value;* the Act seeming to contemplate that the property levied might be disposed of by the defendant. Now what difference can it make whether he disposes of it by a direct sale, or suffers a judgment and execution to be obtained against him, and a sale through the medium of it. But would not a sale of the property by the defendant himself vest a good title in the purchaser? It could not have been the intention of the Legislature that property such as hay, grain and perishable articles, should be held under the incumbrance of a lien for a whole year; and hence they contemplated that it was to be released from the execution, and " returned and re-delivered into the possession of the said defendant." Besides, the Act provides that the writ shall be returned, which takes from the sheriff all control over the property. The lien upon personal property exists because it is *in custodia legis,* and the officer may at any time go and take it into his actual possession, or he may maintain trespass or trover for the taking of it. But after it is delivered to the defendant upon his giving bond, and the writ returned, is not the sheriff's title gone? Could

he then maintain an action for it? And if he could not, is it not because the purchaser from the defendant has a good title for it? And if he has, why would not the subsequent execution creditor have? But as a question of expediency, why construe this Act of Assembly to create a constructive lien, against which all the analogies of law are adverse? If the construction contended for by the appellants be the true one, then a title to the property levied,. made by a constable's execution, would vest no title in the purchaser, or the plaintiff might lose his debt if the property were sold by a constable and he did not make claim to the money, and of which he had no notice whatever. It seems to us that it would be inexpedient to establish a principle of law by which liens should exist upon the personal property for any greater length of time than is necessary to sell it. If it be not sold, it should be discharged absolutely; and there is no reason why a defendant should not give a bond that his property should not be disposed of indirectly through the medium of an execution as well as directly by himself.

The opinion of the Court was delivered by

HUSTON, J.—The Act of Assembly which gives rise to the question here presented is as follows:—" Section 4. That in all cases where personal property shall be taken in execution by virtue of any writ of *fieri facias* issued out of any Court of Common Pleas in this Commonwealth, or by virtue of any execution issued by a justice of the peace, it shall be the duty of the officer to whom such writ shall be directed respectively, when it shall be requested by the debtor, to summon three respectable freeholders or citizens of the vicinage, who being first duly sworn or affirmed by the said officer, shall value and appraise the personal property aforesaid, which valuation or appraisement, signed by the appraisers, together with a schedule of the property taken in execution, shall be annexed to the return on said writ; and in case said *personal* property, or any part thereof, cannot be sold for two-thirds of the amount of said valuation or appraisement, at a public vendue of the same, of which notice shall be given to the plaintiff or plaintiffs, his, her or their agent or attorney, agreeably to the direction of the first section of this Act, that then the sale of such property shall be stayed for the term of twelve months from that date: *Provided*, That the said defendant or defendants shall execute and deliver to the sheriff, coroner or constable, as the case may be, a bond with one or more sufficient sureties, in a penalty of double the amount of the said valuation or appraisement, conditioned for the faithful forthcoming and delivery of all and every part of the said personal property, upon the expiration of the said stay of execution, to the proper sheriff, coroner or constable, or his successor in office, in like good order and condition (reasonable wear and tear being allowed) as when the same was so as afore-

said offered for sale, or other personal property, equal in value and in like good order, to be ascertained in the manner aforesaid; or in default thereof, for the payment of the amount of the appraisement or valuation, with interest and costs, or the amount of the debt, interest and cost for which the levy was made; and upon the execution and delivery of such bond, the said personal property shall be returned and re-delivered into the possession of the said defendant or defendants: *Provided also,* That nothing in this Act contained shall be construed to prevent any judgment creditor or creditors from having the property of any debtor or debtors exposed to sale at any time, and as often as he, she or they may think proper, after it may have once been exposed to sale as aforesaid, by paying all the costs which may accrue in consequence thereof, except the time at which a sale may be effected, according to the provisions of this Act, which costs shall be paid out of the proceeds of the sale as in other cases."

For the Harrisburg Bank it was contended, that although the first execution was stayed by the law, yet its lien was gone, and any second execution would take the property if not sold at least before the return-day of the first execution; that the law did not permit a plaintiff to levy his execution and leave the defendant in the enjoyment of the property, and thus hold the lien of the first execution to the exclusion of other creditors. We cannot agree to this construction. It would be impossible for a sheriff to find a place of keeping all the property levied on in any county during a year. Horses, cows, sheep and swine, would eat up a great part of their value; grain growing or in the stack, or hay, could not find a place of storage. Always, in this State, if the defendant could find sufficient sureties to the sheriff, that the property levied on should be forthcoming at the day fixed for the sale, it has been left in the possession of the defendant in the execution; and yet it was in the custody of the law, and no other creditor could levy on or take it, unless left so long as to show that the levy was made to protect the defendant in possession and keep off other creditors.

Under this law neither the plaintiff nor sheriff can sell for a year, unless the property is bid to two-thirds of its appraised value; there can be no allegation that it remains unsold from fraudulent motives. It is during the year in the custody of the law, as much as it was before this Act, from the time of levy, during the time which elapsed till the day of sale.

No court can construe a law so as to entirely and totally defeat its operation. If any other creditors could take the property as soon as the bond was given, no man would have given bond to deliver it at the expiration of a year.

Besides, no law could require bail to deliver property at the end of 12 months, and yet allow it to be taken by law in 12 days or less. The bail then would, according to the law of the land, give a conditional bond which by the law of the land might be-

come absolute in a week or a day without any default of his; or, if the law offered a delay on giving bail, and the law took away the delay, could the law enforce the payment of the bond given by the bail? No one supposes that the law was intended to defeat a plaintiff absolutely in recovering his debt; but if property is appraised and a bond given, the plaintiff cannot recover from the sheriff, for the law protects him; he could not in these or similar cases recover from the bail, for at the expiration of the year the property was all forthcoming; and if when it was sold the proceeds would go to a subsequent execution, the plaintiff in the first execution would lose his debt, unless his debtor had property sufficient when sold on execution to pay all his debts.

When this law passed, no bank which was discounting paid specie; the first creditor, having a lien on real estate, or levy on personal, could require the officer, on his sale, to receive nothing but specie. This occasioned sacrifices of property to an extent almost beyond belief; and the owner of the execution could bid, because he had nothing to pay; and he got the property as low as his conscience would permit. This was as injurious to other creditors as to the debtor; and the law was enacted as much for their benefit as for that of the debtor; but it would be a sad misapplication of it to take all from a diligent creditor who had secured a lien, and give it to others.

The decree of the court is set aside, and the money in court is ordered to be paid to the executions first levied, and which were stayed on giving bond according to law.

Decree reversed.