## Bain *et al. versus* Lyle.

1. A verdict and judgment in an issue under a sheriff's interpleader is a judicial proceeding, which is final and conclusive on the parties and their privies as to the questions tried and decided.

2. Privity in such cases denotes mutual or successive relationship to the same rights of property.

3. Funk levied on goods on an execution against Austin, Corry claimed the ownership and they were delivered to him under a sheriff's interpleader upon his giving bond, &c. They were levied on and sold to Bain on an execution against Corry. The issue between Funk and Corry was decided against Corry; the sheriff under Funk's execution took the same goods from Bain, and the court discharged a rule for an interpleader issue on Bain's claim of ownership. Bain sued the sheriff in trespass. *Held*, that he was concluded by the verdict against Corry.

4. Austin not being a party to the issue, neither he nor his creditors or assignees were bound by it.

5. The interpleader bond being for the forthcoming of the goods to answer the execution, &c., should the issue be decided against the claimant, they are to be sold under that execution or a venditioni following it.

6. The production of the same goods, although depreciated, if without the fault of the claimant, would discharge him.

7. If by the act of the law the performance of the condition has become impossible, the bond is saved.

8. An execution creditor cannot lose his lien or priority unless by his fault, without having a remedy against the sheriff and on his official bond.

9. A fi. fa. having a lien on goods being stayed by a judicial order does

[Bain *v.* Lyle.]

not lose its priority to subsequent executions, though there was no stipulation in the order of stay that it should not lose its lien.

10. It is proper practice to make stipulation for the continuance of the lien.

March 1st and 2d 1871. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* Of January Term 1870, No. 352.

In the court below James Bain and James N. Kern, trading as Bain & Kern, on the 19th of September 1868, brought an action of trespass d. b. a. against Peter Lyle, sheriff of Philadelphia.

On the 23d of August 1866, judgment was entered on a bond and warrant of attorney in favor of George R. Corry against William Austin for $7000. On the 11th of May 1867, a fi. fa. was issued on this judgment, and his personal property sold by ·the sheriff on the 24th of May to Corry.

On the 25th of May, Amos Funk recovered judgment against Austin for $849.17, on which a fi. fa. was issued, and the sheriff levied on the goods previously sold to Corry under his judgment and execution. Corry claimed the goods and gave his bond, &c., under the Sheriff's Interpleader Act; the sheriff withdrew from the possession of the goods and delivered them to Corry. On the 29th of July, whilst the interpleader issue was pending, Charles S. Poole obtained a judgment against Corry for $4000, and issued an execution, on which the sheriff sold and delivered the same goods, then in possession of Corry to Bain, and Kern became interested in them as partner of Bain.

On the 6th of February 1868, the interpleader issue between Corry and Funk was decided in favor of Funk, who issued a venditioni, and the sheriff took the goods which Bain had purchased under the execution of Poole against Corry, and which were then in Bain's possession. Bain & Kern, the plaintiffs, claimed the goods. The sheriff took the usual interpleader rule, which was discharged June 4th 1868, and the sheriff ·sold the goods under the venditioni.

The taking and selling these goods was the cause of action in this case.

The case was tried, January 30th 1870, before Hare, P. J., when the foregoing facts were given in evidence.

On the trial, Bain having testified that he had been deputy under sheriff Howell, further said:—

"On the 25th of May 1867, to the best of my belief, there was an execution put into my hands, Funk *v.* Austin. I returned that nulla bona. There was an alias fi. fa. in the same case issued, and in that arose the interpleader, the return to that writ which you had read in my return. The interpleader was pending when I quitted the sheriff's office."

[Bain *v.* Lyle.]

The return to the alias fi. fa. was :—

"In obedience to the within writ, I levied upon certain goods and chattels as the property of the defendant, July 24th 1867, which said goods and chattels were afterwards claimed as the property of George R. Corry, upon which claim a rule and interpleader was filed. Rule absolute. *Narr.* and bond filed. Feigned issue ordered by the court to September Term 1867, No. 22, which said issue is still pending and undetermined as appears of record. So answers                                            JAMES BAIN,

Dept. Sheriff," &c.

The court charged :—

"This case turns on a point of law. It is admitted that the goods sold under the venditioni exponas were those which formed the subject of the interpleader, and Bain states that he knew of the interpleader when it was framed, and actually prepared the returns. Under these circumstances your verdict must be for the defendant."

The jury found for the defendant, and the plaintiffs removed the case to the Supreme Court, where they assigned the charge of the court for error.

The rule of the District Court, under the Sheriff's Interpleader Act, is as follows :—

"Whenever a rule taken by the sheriff, under the 9th section of the Act, * * * shall be made absolute by the court, a feigned issue shall be formed in such case upon a wager in the usual form, to determine whether the right of property in the goods levied on and claimed, or any part thereof, is in the defendant or in the claimant, in which issue the claimant shall be the plaintiff, and the plaintiff in the execution the defendant.

"The declaration in such issue shall be filed by the claimant within fourteen days from the time such rule is made absolute; and within the said time the claimant shall give bond to the plaintiff in such penal sum, and with such security as shall be approved by one of the judges of this court, conditioned that the goods levied on and claimed shall be forthcoming upon the determination of the said issue, to answer the execution of the plaintiff, if said issue shall be determined in favor of the said plaintiff in the execution, or so many of them as shall be determined to belong to the defendant, and to be subject to the execution of said plaintiff. When said declaration is filed and bond given, the sheriff shall withdraw from the possession of such of the goods and chattels seized by him under the execution as are claimed by the claimant; no action shall be brought against the said sheriff in respect of the said goods and chattels; and the question of costs, and all further questions, be reserved until after the trial of the said issues."

[Bain *v.* Lyle.]

*A. Briggs*, for plaintiffs in error.—When the sheriff has seized property and returns it to the possession of defendant without some mark to indicate that it is still under levy, it should remain in the hands of its possessor as free from the levy as it was before the sheriff levied upon it: Commonwealth *v.* Contner, 6 Harris 439.

*H. Hanson* and *D. Dougherty*, for defendant in error.—Where property, the subject of a levy, is bought, the purchaser takes it subject to the lien of the levy, although he did not know of the levy: 2 Cases in Eq. abridged, pl. 1, p. 381; Burdon *v.* Kennedy, 3 Atk. 739. *A fortiori* where he who buys knows that the goods are subject to a levy.

Under the Interpleader Act the claimant, instead of the sheriff, becomes the custodian of the goods; the lien of the execution continuing: Hagan *v.* Lucas, 10 Peters' R. 400; Campbell *v.* Spence, 4 Ala. R. 543; Johnston *v.* Minor, 1 Tr. & H. Prac., part 2, p. 903, new ed. (old ed., vol. 1, p. 724).

The opinion of the court was delivered, May 8th, 1871, by

SHARSWOOD, J.—A verdict and judgment in a feigned issue under the Sheriff's Interpleader Act of April 10th 1848, Pamph. L. 450, is a judicial proceeding, which is final and conclusive upon the parties and their privies, as to the question tried and decided in it: Marsh *v.* Pier, 4 Rawle 273; Smith *v.* Elliott, 9 Barr 345. That such a verdict and judgment rests on the same principle as all other judicial determinations of controversies was recognised in King *v.* Faber, 1 P. F. Smith 387. *Interest reipublicæ ut sit finis litium.* Privity in the sense in which it is used in this rule denotes mutual or successive relationship to the same rights of property: 1 Greenl. on Ev. 523. Indeed, the strongest reasons exist for the rigid application of the principle to this class of cases. Otherwise, an execution which ought to be the end of the law would only be the beginning of an interminable succession of lawsuits. If either party, pending an issue to determine the question of property between the claimant and the plaintiff in the execution, by transferring his interest to a third person, could invest that party with the right to levy on the same goods by another execution against the same defendant, or to put in a fresh claim, there would be no end to the controversy. It would be tried over and over again with all the chances of varying success before different juries.

Unless, therefore, the legal effect of the order of the court upon the sheriff's interpleader, and the claimant's bond for the forthcoming of the goods was, so far as the execution creditor was concerned, to divest the title of the defendant, whatever it was, and vest it in the claimant—in other words, to shut up the execution creditor to his remedy upon the bond—it is clear that the learned

[Bain *v.* Lyle.]

judge below was right in his instruction to the jury to render a verdict for the defendant. Bain, as a privy—claiming under Corry by a sale *pendente lite*—was as fully concluded, so far as the execution creditor was concerned, by the result of that proceeding, as Corry himself. It settled as to all parties and privies, that Corry had no right of property or of possession as against Funk; and neither Corry himself nor his assignee could insist upon another trial. Bain's own evidence showed conclusively that he had no cause of action against Sheriff Lyle for seizing and selling the same goods which he levied upon under Funk's execution against Austin. If, however, the claimant's bond and order of the court had the effect of throwing Funk entirely upon the bond, then the judge below committed manifest error. The question is as I have stated it, and not whether the lien of Funk's execution was gone. That would arise as between him and a vendee of Austin or a subsequent execution creditor. Austin was no party to the feigned issue, and therefore neither he, his creditors or assignees, were concluded by it. As to him and them the question would be, whether the lien of Funk's execution continued to bind the goods. That was the way in which the question arose in Hagan *v.* Lucas, 10 Pet. 400, as we shall presently see.

There are two grounds upon which the contention on the part of the plaintiff in error rests:—1st. The analogy of replevin and claim property bonds. And 2d. The policy which is supposed to sanction such a rule.

The bond in this case is entirely different from either a replevin or property bond. A replevin-bond is conditioned to make return of the goods if a return shall be awarded. If the sheriff does not find the goods upon the writ *de retorno habendo* in the possession of the plaintiff he returns eloigned, and thereupon anciently a *capias in withernam* issued to seize other goods of the plaintiff. There was no power in the sheriff to follow the identical goods into the possession of any person to whom the plaintiff had sold them: Morris on Replevin 230. The remedy of the defendant is then upon the replevin-bond or against the sheriff for taking insufficient pledges. A claim property bond is security for the damages which may be recovered. Nothing but money can be recovered on it. That part of the bond usually given by the defendant which provides for a return of the property is a nullity. The judgment, if a verdict is found for the plaintiff, can only be for damages: Chaffee *v.* Sangston, 10 Watts 265; Moore *v.* Shenk, 3 Barr 13; Fisher *v.* Whoollery, 1 Casey 197.

There are other cases more analogous, in which the determinations sustain the ruling of the learned judge below. The bond given by the claimant under the interpleader was "conditioned that the goods levied on and claimed shall be forthcoming upon the determination of the said issue to answer the execution of the

[Bain *v.* Lyle.]

plaintiff, if said issue shall be determined in favor of the said plaintiff in the execution, or so many of them as shall be determined to belong to the defendant, and to be subject to the execution of said plaintiff." It will be observed, that it is not simply that the goods shall be forthcoming, but in order to answer the execution of the plaintiff—the execution before mentioned—upon which the levy was made—not an alias execution with its necessary accompaniment of a new levy, but that identical execution, or one following it up and perfecting it as a venditioni exponas. Nobody can pretend that the production of the identical goods, however depreciated in value, if not injured by his fault, would not discharge the claimant. In Sedgwick's Appeal, 7 W. & S. 260, where, under the provisions of the 4th section of the Act of July 12th 1842, entitled "An Act concerning executions," Pamph. L. 408, usually called the Stay Law, a bond was given conditioned " for the faithful forthcoming and delivery of all and every part of the said personal property upon the expiration of the said stay of execution to the proper sheriff, coroner, or constable," it was held, that where such bond was given and the execution returned, and within the year an execution issued at the suit of another plaintiff, and the latter's property was levied and sold, the first execution was entitled to the proceeds of sale. It is not easy to draw a distinction between that case and this. " This property," says Mr. Justice Huston, " is during the year in the custody of the law as much as it was before this act, from the time of levy during the time which elapsed till the day of sale. No court can construe a law so as entirely and totally to defeat its operation. If any other creditors could take the property as soon as the bond was given, no man would have given bond to deliver it at the expiration of a year. Besides no law would require bail to deliver property at the end of twelve months, and yet allow it to be taken by law in twelve days or less. The bail then would, according to the law of the land, give a conditional bond which, by the law of the land, might become absolute in a week or a day without any default." The surety in the bond undertakes for the forthcoming of the identical goods, not for their value, except in case of breach; if by act of law the performance of the condition has become impossible, upon every principle the bond is saved: Co. Litt. 206, *a.* So where without any law to authorize it, the sheriff delivered the property to the defendant upon a forthcoming bond; it was held not to avoid the lien as against a subsequent execution creditor: Lantz *v.* Worthington, 4 Barr 153. Indeed the principle is a general one—*actus legis nemini facit injuriam.* The execution creditor cannot lose his lien or priority without some neglect or default on his part, without at least having a full remedy against the sheriff and on his official bond. Therefore it was held that a testatum fi. fa. from one county,

18 P. F. Smith—5

docketed in the Common Pleas of another, and a lien on the defendant's goods, does not lose its priority over subsequent executions by reason of a judicial order staying it, though there was no stipulation in the order staying the testatum that its lien should remain : Batdorff *v.* Focht, 8 Wright 195. " It is a general principle," said Mr. Justice Woodward, " that interlocutory orders shall not impair vested liens. It is usual to accompany such orders with a stipulation that the lien of the writ which is the subject of the order shall remain until the motion has been disposed of on final hearing; and this is a prudent and proper practice. But when, as in this case, it is omitted, the lien must nevertheless be regarded as preserved—for it is one of the vested legal rights of the plaintiff, and can no more be sacrificed by an edict of the court without a hearing than any of his other civil rights, whether of liberty or property." To these decisions of this court may be added one of the Supreme Court of the United States which is entirely in point. In the case of Hagan *v.* Lucas, 10 Peters 400, where there was under review a law similar to our Act of 1868, and a delivery of the property levied on to the claimant on a forthcoming bond, it was held that the lien of the execution was not discharged by the giving of bond with security. " On the giving of the bond," says Mr. Justice McLean, " the property is placed in the possession of the claimant. His custody is substituted for the custody of the sheriff. The property is not withdrawn from the custody of the law."

Almost immediately after the passage of the Act of 1848 and the adoption of the rule of court which regulated the mode of proceeding and provided for the claimant's bond, the District Court of Philadelphia, construing their own rule, adjudged this to be the law: 1 Troubat & Haly 903, Fish's edition. That decision was acquiesced in by the profession, and the practice has since conformed to it. After the determination of the feigned issue the sheriff has proceeded to sell on the same execution, or if for any reason it has been returned with a levy upon a venditioni exponas founded upon it, and if the goods were not forthcoming to answer the execution has returned that fact. During all that period I have never heard of any practical inconvenience resulting from it. It is possible that now and then a claimant has had restored to him a store of goods, which he has proceeded to retail. The lien of the execution has never stood in his way. It is next to impossible for the sheriff or execution creditor to follow the goods in such a case, and in the majority of instances, and in all of that character, he is necessarily thrown on his bond. A grocer may sell by the pound to many hundred customers a hogshead of sugar to which he has no title. No doubt actions of trover may be brought against them all by the true owners. His store is not a market overt as it would be in London. Yet the

[Bain v. Lyle.]

community has suffered no practical inconvenience from this principle, and we should be very careful lest in infringing upon it we do not introduce greater practical inconvenience and injustice than we aim to avoid. It is the province of the courts to construe, not to legislate—jus dicere, not jus dare. It might have been wise for the District Court in the adoption of this rule to have provided a bond which would be absolute for the payment of the appraised value of the goods if found to be subject to the execution. Much, however, might be said on both sides of that question. They adopted the policy of a forthcoming bond, and held that the execution and delivery of such a bond did not discharge the goods from the lien of the execution, or substitute the bond for the goods. At this distance of time we will not reverse that ruling and the practice which has grown up in consequence of it.

Judgment affirmed.