## Taylor v. Ellis, Appellant.

200      191
38SC 1  23

*Execution—Goods in custody of the law—Replevin—Act of April 3, 1779.*

Goods levied upon under execution process and in the custody of the law cannot be taken from their custodian by a writ of replevin.  The prohibition of the act of April 3, 1779, applies not only in cases where the sheriff or constable is the defendant in the replevin suit, but also in cases where any person who is custodian of the goods is made defendant.

Where goods have been taken in execution by the sheriff prior to an assignment for creditors by the defendant in the execution, and the sheriff places the goods in the custody of an auctioneer under an agreement between himself and the assignee that the goods shall be sold, and the proceeds applied, first, to the payment of the execution, and the balance, if any, to the assignee, the goods cannot be taken by a writ of replevin

issued at the instance of a party claiming title to them. The remedy of the claimant is to file a bond and ask the court to order the sheriff to deliver the goods to him.

*Replevin—Practice, C. P.—Invalidity of writ.*

The defendants in an action of replevin may raise the question of the invalidity of the writ at the trial, although a motion to quash the writ has been previously denied.

Argued April 3, 1901. Appeal, No. 30, Jan. T. 1901, by defendants, from judgment of C. P. No. 2, Phila. Co., March T., 1893, No. 486, on verdict for plaintiff in case of Annie Eugenie Taylor v. Samuel S. Ellis, Alfred S. Ellis and Joseph S. Albright, trading as M. Thomas & Sons, and. Thomas Ashby Blythe, Assignee for the Benefit of Creditors of Alexander K. Taylor. Before McCollum, C. J., Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Replevin for goods levied upon, and in the custody of the sheriff's auctioneer. Before Wiltbank, J.

The defendant presented this point:

5. If the jury believe that the goods in question in this suit had been levied on by the sheriff under the judgment of Fluke & Company, and had been brought to M. Thomas & Sons by the sheriff's directions and orders and were retained in the possession of M. Thomas & Sons, as the agent and official auctioneer of the sheriff, at the time they were replevied by the plaintiff, then I charge you that said goods were in the custody of the law and could not be replevied and your verdict must be for the defendant. *Answer:* Refused. [8]

Verdict and judgment for plaintiff. Defendant appealed.

*Error assigned* was (8) above instruction, quoting it.

*John G. Johnson,* with him *Fred. Taylor Pusey* and *Wendell P. Bowman,* for appellants.—The goods were in the custody of the law and could not be replevied: Act of April 3, 1779; Shaw v. Levy, 17 S. & R. 99; Gummey v. Passavant, 32 W. N. C. 217; Struthers v. Minor, Dist. Ct. of Phila. June 4, 1848; 1 Troubat & Haly's Practice, sec. 1143; Hagan v. Lucas, 10 Peters, 400; Flint v. Marsh, 2 W. N. C. 67; McJunkin v. Mathers, 158 Pa. 137; Stiles v. Griffith, 3 Yeates, 82; Elkins v. Griesemer, 2 Penny. 52.

*Thomas Earle White,* for appellee.—The act of April 3, 1799, 2 Purd. Dig. 1863, upon which appellant relies, applies only to cases where the sheriff is made the defendant in the replevin: English v. Dalbrow, 1 Miles, 160 ; Com. v. Lelar, 9 Legal Int. 50 ; Weed v. Hill, 2 Miles, 122 ; Tufts v. Cole, 3 Kulp, 436.

After the plaintiff filed her bond in the interpleader proceedings, she became the absolute owner of the goods released from the custody of the law, and subject only to the execution creditor's lien : Battersby v. Haubert, 8 W. N. C. 94.

OPINION BY MR. JUSTICE BROWN, July 17, 1901 :

On March 25, 1893, Thomas C. Fluke & Company issued execution against Alexander R. Taylor on a judgment which they had obtained against him in court of common pleas No. 3 of Philadelphia county.   Two days later, on March 27, the sheriff levied on certain personal property as the goods of the defendant in the execution, and it is admitted that those for which this writ of replevin was issued were included in the levy.   On April 15, Taylor executed a deed of assignment for the benefit of creditors to T. Ashby Blythe, appellant, and, a day or two afterwards, the goods so under levy were removed by the sheriff to the auction rooms of M. Thomas & Sons, who seem to have been his official auctioneers, under an agreement between that officer and the assignee that they should be sold and the proceeds applied, first, to the payment of the execution, and the balance, if any, turned over to Blythe, the assignee.   Under the circumstances, this was an entirely proper and lawful arrangement, most likely to result in realizing more for the property than could have been obtained for it at sheriff's sale, and interfering in no manner with the rights of the execution creditor under the levy : Kent, Santee & Company's Appeal, 87 Pa. 165 ; Mathews's Estate, 144 Pa. 139 ; Leidich's Estate, 161 Pa. 451 ; Broadhead v. Cornman, 171 Pa. 322. Before the goods were removed to the rooms of M. Thomas & Sons, Annie E. Taylor, wife of the defendant in the execution and plaintiff in this action, made claim to them, and, on the sheriff's rule for an interpleader, a feigned issue was awarded to determine the title to them.   It does not appear that the sheriff delivered possession of them to the claimant upon the filing of her bond ; but, on the contrary, the institution of this

suit is evidence that such possession was not given, and, from all that can be gathered from the record, at the time this writ went forth they were not only in the custody of the sheriff, but in his actual possession in the auction rooms of M. Thomas & Sons, where he had placed them. If the claimant, after her bond had been filed, was entitled to the possession of them, she needed no writ of replevin to get them, for the court, upon her application, would have ordered the sheriff, its officer, having them in custody, to deliver them to her, and he could have taken them from the rooms where he had placed them without any other process than the fieri facias in his hands; but, instead of such an application, she brought the action now before us, and the fundamental question for consideration is, whether the goods, under the circumstances stated, were subject to be taken by a writ of replevin. The appellant contends that, at the time the writ was issued, they were in the custody of the law, and, therefore, could not be taken; the appellee insists that, by the filing of her bond as a claimant, they were relieved from the law's custody and replevin was properly brought for their possession. The question is to be determined without regard to the act of May 26, 1897, regulating interpleader practice, for its provisions have no application to this suit, brought more than four years before its passage; and what we may say must, therefore, be understood as if the act had not been passed.

That these goods were in the custody of the law at the time plaintiff brought this suit is so well settled by authority that the question should no longer be regarded as an open one. Even if, upon the giving of a bond by a claimant to goods seized under a writ of execution, he is entitled to the possession of them and gets them, they continue to be in the law's custody, until it can be judicially determined whether they shall be sold as the property of the debtor against whom the execution issued, or remain in the hands of the claimant as his absolute property, freed from the levy. When possession is given to the claimant, it is upon the express condition of his bond, as in the case now before us, that "the goods levied on and claimed shall be forthcoming upon the determination of the said issue, to answer the execution of the plaintiff, if said issue shall be determined in favor of the plaintiff in said execution." Though in the pos-

session of the claimant during the period intervening between the framing of the issue to determine the title and the final disposition of the same, the custody of the law is never relinquished; and, if the issue be determined in favor of the plaintiff in the execution, they can be sold on the appropriate writ of venditioni exponas. In Caven v. Cole & Huhn, 12 Phila. 425, during the pendency of the issue to determine the title of the claimants, the goods were sold by their receivers as their property, under an order of court, and the sale was confirmed; but when, by a verdict in the feigned issue, it was determined that the goods purchased from the receiver belonged to the defendants in the execution, and not to the claimants, a venditioni exponas was issued for their sale, though in the hands of the purchaser from the receivers. Custodianship may be substituted; but the law's custody is not abandoned. At first, when seized under the execution, the custodian is the sheriff; later on, it is the claimant, if he has possession of the property; but whoever has it, the law's custody continues, until it is judicially determined that the property did not belong to the defendant in the execution and ought not to have been seized: Bain v. Lyle, 68 Pa. 60; Byrne v. Hayden, 124 Pa. 170; and in Battersby v. Haubert, 8 W. N. C. 94, upon which the appellee seems to mainly rely, this is distinctly recognized. In Hagan v. Lucas, 10 Peters, 400, the highest judicial authority, in passing upon this very question, has declared that, " On the giving of the bond, the property is placed in the possession of the claimant. His custody is substituted for the custody of the sheriff. The property is not withdrawn from the custody of the law. In the hands of the claimant, under the bond for its delivery to the sheriff, the property is as free from the reach of other processes as it would have been in the hands of the sheriff." By this is meant that no process can snatch it from the law's grasp where it must remain until it can be known whether the law ought to have taken it. While in such grasp it may be more tightly bound by other similar writs of execution issuing from the same court, at the instance of other creditors of the defendant, but the process of no newcomer, claiming it as his, can take it bodily away. And no process should take from the hands of a claimant property which the law gives him to hold for a season as its custodian under his bond to produce it when called for,

if not entitled to keep it as his own; for, by such process, the
law itself would make compliance with the bond which it ex-
acted impossible; and "this would, indeed, be a reproach to
the law and justice :" Hagan v. Lucas, supra. But we need
not dwell on reasons why goods and chattels in the custody of
the law should not be taken from their custodian by a writ of
replevin, for there is statutory prohibition of it. The 2d sec-
tion of the act of April 3, 1779, entitled "An act declaring
replevins, attachments, judgments and executions, in certain
cases, to be erroneous and void," is as follows : "All writs of
replevin granted or issued for any owner or owners of any
goods or chattels, levied, seized or taken in execution, or by
distress, or otherwise, by any sheriff, naval officer, lieutenant
or sub-lieutenant of the city of Philadelphia, or of any county,
constable, collector of the public taxes, or other officer, acting
in their several offices, under the authority of the state, are ir-
regular, erroneous and void ; and all such writs may and shall, at
any time after the service, be quashed, (upon motion,) by the
court to which they are returnable, the said court being ascer-
tained of the truth of the fact, by affidavit or otherwise." The 3d
section provides : " The court, besides quashing the said writs,
may and shall award treble costs to the defendant or defendants
in such writs ; and also, according to their discretion, order an at-
tachment against any prothonotary or clerk, who shall make out
or grant any such writ, knowing the same to be for goods or chat-
tels taken in execution, or seized as aforesaid." To avoid the
effect of this act, the appellee relies upon several decisions of
lower courts, that it does not apply where the sheriff or other
officer is not the defendant in the replevin. The act cannot
be so read, and it ought not to be so interpreted. The plain
words are, that a writ of replevin issued for any goods "levied,
seized or taken in execution" is "irregular, erroneous and
void." If the goods for the possession of which the writ
is issued, be levied on, "seized or taken in execution," or, in
other words, be in the custody of the law, the writ is "irregu-
lar, erroneous and void." These words are unmistakable that
the test of the irregularity and invalidity of the writ is the
law's custody of the property, no matter in whose actual pos-
session it may be. Sheriffs and constables, as a rule, do not
take into their possession personal property levied on and seized

by them under writs of execution placed in their hands, but leave it with the defendants until sold; and, if the construction of the act of 1779, as contended for by the appellee, should prevail, its wise provisions would apply only in the exceptional cases where the sheriff, constable or other officer happens to take actual possession of the property. In all other cases they would be avoided by simply making the person in apparent possession of the property the defendant, though such possession might really be the sheriff's; and, by a writ directed to that officer himself, to be served on another, the property could be absolutely taken away from him though held by him on the final process of execution. Not only interference with the officer in the discharge of his duty would result in such a case, but interminable confusion would follow. Again, the writ might be collusively issued and the plaintiff put in possession of the property under levy under an utterly worthless bond, exception to which could be taken only by the defendant. The sheriff would be no party to such an action and would be powerless, when called upon by the plaintiff in the execution, to produce, for sale, the property on which he had levied. In Tufts v. Cole, 3 Kulp, 436, following English v. Dalbrow, 1 Miles, 160, also relied upon by the appellee, the purpose of the act is said to be " to prevent interference with, and annoyance to, the officer in the discharge of his duty, by replevins upon the property which he has seized in execution, and for which he has made himself responsible; " but the facts in that case most clearly show that the interference " with the officer in the discharge of his duty " can be more serious when he is not made the defendant in the replevin than when he is. On March 11, 1885, a soda fountain and fixtures were levied on by a constable at Hazleton, as the property of Cole, by virtue of an execution issued by a justice of the peace. It was advertised by the constable for sale, but left in the store of the defendant in the execution. On March 12, 1885, a writ of replevin was issued by Tuft against Cole for this property. The writ was executed by the sheriff, who made return that he had served it upon the defendant, had replevied the property, as commanded, and delivered it to the plaintiff. From all that appears, the constable had no notice whatever of the proceedings to take the property from his custody as the officer of the law, and only found, when he went to sell it, in pursuance of his advertisement,

that it had been spirited away. What was done in that case could be repeated whenever, by virtue of an execution, a constable would leave in the possession of the defendant the goods levied on, as is the almost uniform practice, and some one else, should claim them as an honest or collusive claimant. It is clear that, if the act of 1779 is, as it is admitted to be, for the prevention of interference with sheriffs and constables in the discharge of their duties, its wise provisions are more frequently needed when they are not defendants in replevin suits than when they are. The third section of the act is against the appellee's construction of it. In many cases there is nothing in the præcipe to indicate, that the defendant is a public officer, and the prothonotary or clerk making out or granting the writ in such a case, not knowing the same to be for goods or chattels taken in execution, is not liable to the attachment for having issued it; but in any case, even though there be nothing in the præcipe to indicate to him that the goods for which the writ is asked for are in the custody of the law, if he issue the same, knowing it " to be for goods or chattels taken in execution," the attachment, in the discretion of the court, may issue against him.

The provisions of the act of 1779 are so plain that they cannot be misunderstood and dare not be ignored; and what its purpose is can be found in the following words of ROGERS, J., in Shaw v. Levy, 17 S. & R. 99: " The motives for passing this highly beneficial act, are set forth in the preamble, by the legislature themselves, to be, to remedy an abuse which had prevailed, in granting writs of replevin, for goods and chattels taken in execution, and for fines and penalties due the commonwealth, to the delay of public justice, and to the great vexation of the officers concerned in taking or levying the same. The anxiety of the legislature to remedy the mischief appears in the penalties they have imposed for its wilful violation. It is intended to prevent delay, and also for the security of the officer concerned in the levy. The least reflection will serve to show the mischief to which such a practice must necessarily lead; so much so, that it is impossible to foresee the extent to which a creditor may be delayed in his just demands, by a litigious and fraudulent debtor. An execution, which is the end of the law, would be only the commencement of a new lawsuit, and so, toties quoties, as his goods were taken in execution by the public officer."

Lex semper dabit remedium; and the appellee, as before stated, could have obtained possession of the property the subject of this controversy, if she was entitled to it, by asking the court to order the sheriff to deliver it to her. Such an order would have been enforceable by attachment, and failure to comply with it would have made the officer liable to the appellee. Her contention is, that the sheriff had withdrawn from the possession of the goods, and her suit was simply against those having them; but the act of assembly is in the way of her right to this writ of replevin, for the property was in the custody of the law, having been levied on, seized and taken in execution, even if it was in the actual possession of the defendants.

Blythe, the appellant, may have voluntarily intervened as a defendant in this suit; but he did so to protect goods which he asserted belonged to his assignor when the deed of assignment was executed, and, in such intervention, he certainly is not estopped from challenging the validity of the writ under which the plaintiff would take them. If it was " void," by the words of the law, when issued, nothing that he could do would make it valid. The motion to quash the writ having been denied, the defendants could again raise the question of its invalidity on the trial: Shaw v. Levy, supra.

The fifth point submitted by the defendants should have been affirmed; and, as the evidence was conclusive that the goods sought to be replevied were in the custody of the law at the time the writ was issued, the verdict should have been in their favor. We need consider no other questions raised by the specifications of error.

Judgment reversed.