# Cunningham, Appellant, *v.* Wilmerding Borough.

*Replevin—Quashing writ—Act of April 3, 1779, 1 Sm. L. 470.*

1. The Act of April 3, 1779, 1 Sm. L. 470, providing for quashing writs of replevin for goods seized by public officers, has no application to a case where a police officer of a borough seizes a vehicle to compel the owner to pay a license tax, if it appears that the officer had no process issued by any court, magistrate or tribunal, and that there was no law or lawful ordinance authorizing him to make such a seizure.

2. In such a case where the defendant's motion to quash the writ is based on an ex parte affidavit averring that the vehicle had been abandoned on a street of the borough, and that the officer seized it to abate a nuisance, and this averment is uncertain in its terms, and is flatly contradicted by the answer, the court will refuse to quash the writ of replevin.

Argued April 15, 1908.  Appeal, No. 23, April T., 1908, by plaintiffs, from order of C. P. No. 2, Allegheny Co., Oct. T., 1906, No. 915, making absolute rule to quash writ of replevin in case of R. H. Cunningham et al., trading as R. H. Cunningham & Sons, v. Wilmerding Borough, a Municipal Corporation, and H. F. Davenport, Chief of Police, Defendant, Borough. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.  Reversed.

Rule to quash writ of replevin.
The opinion of the Superior Court states the facts.

*Error assigned* was order making absolute rule to quash writ.

*Stewart M. Cunningham,* for appellants, cited: McJunkin v. Mathers, 158 Pa. 137; Shaw v. Levy, 17 S. & R. 99.

*Wm. H. Thompson,* for appellee.—The legislature clearly intended to make the court to which writs of replevin are returnable a chancellor to determine, upon affidavit or otherwise, on motion, whether the facts of a particular case brought it within the act of 1779.  And the finding of the court ought not

to be subject to review unless a flagrant abuse of this discretion appears. It is the duty of any citizen, and more particularly of a police officer, to abate a public nuisance, especially where the nuisance is of such a character as to be dangerous to the public: Easton, etc., Pass. Ry. Co. v. Easton, 133 Pa. 505; Lancaster Turnpike Co. v. Rogers, 2 Pa. 114; Rung v. Shoneberger, 2 Watts, 23.

A police officer of a municipal corporation is an officer acting under the authority of the state within the meaning of the act of April 3, 1779: McJunkin v. Mathers, 158 Pa. 137.

OPINION BY RICE, P. J., February 26, 1909:

This was an action of replevin brought to recover a team of horses, wagon and harness alleged in the statement of claim to have been wrongfully and maliciously taken from the plaintiffs' possession by Davenport, one of the defendants, acting as police officer and agent for the borough of Wilmerding, the other defendant, and unjustly detained by Davenport until the writ issued, when they were delivered to the plaintiffs by the sheriff. In their original petition to quash the writ defendants alleged "that said team was taken for nonpayment of a license fee for which the same became liable under one of the borough ordinances of said borough." The plaintiffs demurred to the petition and in an opinion filed the learned court said: "The information contained in the petition is not sufficient to satisfy us of the facts necessary to enable us to determine the matter. Defendants should amend their petition by setting forth at length the ordinances under which the license was imposed, the proceedings had to collect the license fee and the circumstances under which the property was levied upon by the officer. When we have this additional information before us we will be in position to determine whether or not the writ should be quashed." Accordingly, the court continued the case and allowed the defendants ten days within which to amend their petition in accordance with the suggestions contained in the opinion. Thereupon the defendants filed an amended petition to which they attached a copy of an ordinance which provides for the collection of license fees from the owners of certain

vehicles, requiring such owners to pay certain fees and have their vehicles registered and numbered, and providing for the imposition of a fine upon any person convicted of a violation of any of its provisions. Evidently perceiving that this ordinance would not sustain the action of the officer, the defendants set up the following as the grounds of the motion to quash: "That on the        day of        , 1906, defendant demanded from plaintiffs' driver a license for using team within the borough limits. That plaintiffs' driver abandoned the team on one of the streets of Wilmerding and defendant then took the team and fed and stabled it. That plaintiffs refused to pay the cost and expense for the feeding and taking care of the team and refused to take out a license fee and made no demand for the return of the team until after the writ of replevin issued in this case." To this the plaintiffs filed a sworn answer going quite fully into a history of the proceedings. The part material to be noticed here is as follows: "The plaintiffs further deny that the driver abandoned said team, but aver said team was wrongfully and maliciously taken from him by one of the said defendants who boasted he would hold said team and wagon until plaintiffs would agree to be bound by said ordinance." No depositions or other affidavits were submitted by the defendants to sustain their contention that the writ of replevin was void, and it is not asserted that any oral testimony was given upon the hearing of the rule to quash the writ. The court, without filing an opinion indicating the grounds of its decision, made the rule absolute, and from that order we have this appeal.

The Act of April 3, 1779, 1 Sm. L. 470, provides as follows: "That all writs of replevin granted or issued for any owner or owners of any goods or chattels, levied, seized or taken in execution, or by distress or otherwise, by any sheriff, naval officer, lieutenant or sub-lieutenant of the city of Philadelphia, or of any constable, collector of public taxes, or other officer, acting in their several offices under the authority of the state, are irregular, erroneous and void; and that all such writs may and shall, at any time after the service, be quashed (upon motion) by the court to which they are returnable, the said court being ascertained of the truth of the fact, by affidavit, or otherwise."

As shown by the preamble, the purpose of the act was to remedy an abuse which had prevailed in granting writs of replevin for goods and chattels taken in execution, and for fines and penalties due the commonwealth, to the delay of public justice, and to the great vexation of the officers concerned in taking or levying the same. "The least reflection will serve to show the mischief to which such a practice must necessarily lead; so much so, that it is impossible to foresee the extent to which a creditor may be delayed in his just demands, by a litigious and fraudulent debtor. An execution, which is the end of the law, would be only the commencement of a new lawsuit, and so, toties quoties, as his goods were taken in execution by a public officer:" Shaw v. Levy, 17 S. & R. 99. See also Taylor v. Ellis, 200 Pa. 191, where the purpose of the act is very fully discussed by Mr. Justice Brown. The statute being remedial is to be construed liberally: Pott v. Oldwine, 7 Watts, 173. Accordingly, it was held in that case that property taken by distress for non-payment of a militia fine could not be replevied by the alleged delinquent. So in McJunkin v. Mathers, 158 Pa. 137, it was held that a constable who, in obedience to a borough ordinance, impounded cattle found straying in the streets, was, in respect of such act, an officer acting under the authority of the state within the meaning of the act of 1779, and therefore replevin would not lie by their owner against the constable for the cattle so impounded. Upon the same principle it was held in Elkins v. Griesemer, 2 Penny. 52, that an inspector of oils appointed under the act of 1874, who seized oils as being below the fire test, was therein an officer acting under the authority of the state, and therefore the oils were not repleviable by the owner. But on the other hand Judge Pearson in a well-considered opinion refused to quash a writ of replevin under the act of 1779 for goods that were levied on for school taxes by a constable acting under a warrant from the tax collector, such warrant being issued without authority, and the constable not being a regularly appointed deputy collector: Shoemaker v. Swiler, 2 Pears. 114. This decision is not in conflict with the other decisions above cited. It is not sufficient that the goods for which the replevin issues were seized by and are in the custody of an

officer of the law. He must in seizing and holding them be acting under the authority of the state. If he has no process issued by some court, magistrate or tribunal having jurisdiction to issue such process, he must be able to point to some law or lawful ordinance authorizing him to seize private property without process, and hold it for a particular lawful purpose, and must satisfy the court that he seized and held it for that purpose. The present case furnishes an illustration of our meaning. The ordinance above referred to, granting for present purposes its validity in every particular, neither expressly nor by implication authorizes an agent or police officer of the borough, summarily and without process, to seize private property in satisfaction or to compel payment of a license fee due from the owner. Nor has any statute or ordinance relative to estrays been pointed out, as was done in McJunkin v. Mathers, authorizing police officers of the borough of Wilmerding to seize and impound estrays. Hence it cannot be said that Davenport, though an officer within the meaning of the act of 1779, was acting within the scope or apparent scope of his official power relative to the enforcement of the ordinance, the collection of license fees, or the impounding of estrays. It is frankly conceded by appellee's counsel that the allegations of the petition, even if true, do not show that the horses were estrays, but contends that a team and wagon abandoned on a street of a borough constitute a nuisance which a police officer has authority to abate in a peaceable way. It may well be questioned whether the averments of the original and amended petitions, construed as a whole, show that the property was seized and held in the exercise of the policeman's power to abate public nuisances, or that that was the purpose for which it was taken and held. But assume that by great liberality of construction they may be so regarded, it is to be borne in mind that the plaintiff denied that the driver abandoned the team and averred in most explicit terms that it was wrongfully taken from him by the policeman, who boasted that he would hold the team and wagon until plaintiffs would agree to be bound by the ordinance. Clearly, if the plaintiffs' averment be true, the officer was not acting under the authority of the state, but in a high-handed

and oppressive manner for which he had no authority or color of authority whatever. We entirely agree with the appellees' counsel that the legislature intended to give the court to which writs of replevin are returnable a wide discretionary power. We are of opinion, also, that an order quashing a writ of replevin, under the act of 1779, which is based on conflicting evidence ought not to be set aside on appeal, the reason being that the court below is authorized to proceed in a summary manner and the evidence submitted at the hearing of the motion is not brought up for review. But we are unable to agree to the proposition, which an affirmance of this judgment would tend to establish, that if a defendant's motion be based on an ex parte affidavit which is as uncertain in its averments and as explicitly contradicted as this is, the court ought to quash the writ without having any other evidence of any kind produced by the defendant to sustain his uncertain and contradicted allegations. In Shaw v. Levy, 17 S. & R. 99, Justice ROGERS said: "The court may ascertain the facts, either by affidavit or otherwise; that is, as I understand it, with the intervention of a jury, referred to them by a plea in abatement or in bar. Where the fact, or the law arising on the facts, was doubtful, a prudent judge would refuse to quash on affidavit, but would leave the party to his plea. In this way, and in this way only, he would have the assistance of the jury, and would secure to the party a review of his opinion on the law of the case, by the Supreme Court." We do not understand this to mean that the court may not on the hearing of a motion to quash receive depositions pro and con; or that if a counter affidavit be filed the court is bound to remit the defendant to his plea in abatement or in bar. It is suggested, in effect, that the foregoing remarks of Justice ROGERS were not necessary to the decision of the precise question before the court. Be that as it may, we are of opinion that they suggest the appropriate mode of procedure in a case situated like this.

It is argued that the plaintiffs' statement of claim fails to show a cause of action upon which the plaintiffs could recover against the borough, and in support of this proposition counsel invoke the general principle that a municipal corporation is not

liable for the torts of its police officers. We express no opinion upon the question of the liability of the borough. That question, as we understand, does not properly arise upon a motion to quash the writ under the act of 1779.

The order is reversed at the costs of the appellees, the rule to show cause is discharged and the writ reinstated.