[PHILADELPHIA, APRIL 16, 1835.]

## CORLIES and Company, *against* STANBRIDGE.

## FLETCHER and LOUD *against* The Same.

### CERTIORARI.

A levy on personal property left in the defendant's hands by the request, and at the risk of the plaintiff, for the purpose of securing his claim, and to prevent a sale of the goods for the payment of other creditors, is fraudulent and void, as against a second execution creditor.

*A.* on the 25th May, 1829, issued a *fi. fa.* to August term, 1829, returned "levied on real and personal property, as per schedule annexed; the personal property left in possession of defendant, by request and at the risque of the plaintiff," and on the 23d of October, 1829, issued an *alias fi. fa.* to November term, 1829, returned "levied on lands on *fi. fa.* to August term, 1829, and condemned as per annexed inquisition."

*B.* on the 2d of April, 1830, issued a *fi. fa.* returned levied, subject to the lien of *A.'s fi. fa.;* under a *venditioni exponas* on which, issued the 6th of April, 1830, the property was sold.

*Held,* that *B.* was entitled to take the proceeds out of court.

*Quere,* whether the issuing an *alias fi. fa.* and levy on real estate, followed by condemnation, is not itself an abandonment of a levy on personal estate, made under the *fi. fa.?*

THIS was a *certiorari* to the Common Pleas of Montgomery County.

It was an appeal from the decree of the court below, awarding distribution of money made under a sheriff's sale.

The facts of the case were as follows:—

On the 4th of May, 1829, *Fletcher* and *Loud,* entered judgment in the Court of Common Pleas of Montgomery County, against *Stanbridge,* on a warrant of attorney accompanying a bond in the penal sum of thirty thousand dollars, conditioned for the payment of fifteen thousand dollars, dated February 18, 1829, and payable on demand with interest.

On the 11th May, 1829, *Corlies & Company,* entered a judgment against *Stanbridge,* in the same court, in the sum of six thousand dollars, on an indemnifying bond dated November 7, 1828.

On the 25th May, 1829, *Fletcher* and *Loud,* issued a *fi. fa.* on their judgment to August term, 1829, which was returned by the sheriff, as levied on real and personal property, as per schedule annexed, the personal property left in possession of the defendant by request, and at the risque of the plaintiff.

On the 23d of October, 1829, *Fletcher* and *Loud,* issued an *alias fi. fa.* to November term, 1829, to which the sheriff returned levied,

on lands on *fi. fa.* to August term, 1829, No. 16, and condemned as per the annexed inquisition.

On the 2d April, 1830, *Corlies & Company*, issued a *fi. fa.* on their judgment, to April term, 1830, No. 28, to which the sheriff returned that on the 5th day of April, he had seized and taken in execution, certain personal property of *Stanbridge*, subject to the lien of a *fi. fa.* returnable to Aug. term, 1829, No. 16, upon which a *venditioni expo nas* was issued returnable to April term, 1830, at the suit of *Fletcher* and *Loud*, by virtue of which the said personal property was sold.

On the 6th of April, 1830, *Fletcher* and *Loud*, issued a *venditioni exponas* to April term, 1830, No. 33, requiring the sheriff to sell the personal property, levied on under the *fi. fa.* to August term, 1829, No. 16.    To this, the sheriff returned that he had sold the personal property in the writ mentioned, (excepting thereout certain articles in the said writ described as personal property, which at the time of sale were determined to belong to the freehold,) for the sum of eighteen hundred and twenty-five dollars sixty-five cents.

On the 16th August, 1830, a rule was obtained on the sheriff by *Fletcher* and *Loud*, to pay over to them the money made on their *venditioni exponas*, and on the same day a rule on the sheriff was obtained by *Corlies & Co.*, to pay over to them the amount of their execution, or show cause, &c.

On the 22d January, 1833, the court discharged the rule obtained by *Corlies & Co.*, and made absolute the rule to show cause why the sheriff should not pay *Fletcher* and *Loud*, the money made on their *venditioni exponas*.

From this decree *Corlies & Co.* appealed, and assigned the following errors.

1st. Because *Fletcher* and *Loud*, had lost any lien which they might have had by virtue of the *fi. fa.*, and levy upon real and personal property, to August term, 1829, No. 16, by issuing an *alias fi. fa.* to November term, 1829, No. 33, and levying on land which was condemned; this being a waiver of their lien on the goods, and an election to take real estate.

2d. Because by the delay of sale, and leaving the goods in the possession of the defendant by request, and at the risk of the plaintiff, it was a fraud upon *Corlies & Co.*, another execution creditor.

3d. Because, the only object of *Fletcher* and *Loud*, as appears by the proceedings, was to obtain a security for their debt, and not a satisfaction of it.

4th. Because the *fi. fa.* of *Corlies & Co.*, was a lien on the goods levied upon, there not existing at the time of that levy any previous execution which bound them.

5th. Because, for these reasons the decree should have been for

(Corlies & Co. *v.* Stanbridge—Fletcher & Loud *v.* The Same.)

*Corlies & Co.*, another execution creditor of the defendant, and not for *Fletcher* and *Loud.*

It was argued by *Potts* for *Corlies & Company*, the appellants, and by

*Bradford* and *Chauncey*, for *Fletcher* and *Loud.*

For *Corlies & Co.*, the appellants, it was argued, that the errors assigned, might be considered under two heads:—

1. That *Fletcher* and *Loud*, had lost any lien which they might have had by the *fi. fa.* and levy upon real and personal property, to August term, 1829, No. 16, by issuing an *alias fi. fa.* to November term, 1829, No. 33, and levying on land which was condemned. That it was a waiver of their lien on the goods, and an election to take the real estate. That by the *alias fi. fa.* nothing was held but the land : that it was not competent for them to have two executions at the same time, or in other words, to hold the goods by one *fi. fa.* and real estate by another. That the *venditioni* which followed the *alias fi. fa.*, was applicable to the land, and acted as an abandonment of the goods. That *Fletcher* and *Loud*, if they had intended to hold their levy on the goods, could have sold under the *fi. fa.* and their *vend. exps.* was not necessary, and if *Corlies & Co.*, had not issued their *fi. fa.* it was evident *Fletcher* and *Loud* would not have proceeded.

2. That the object of *Fletcher* and *Loud*, by their proceedings was to obtain a security for their debt, and not a satisfaction of it ; and was a fraud upon *Corlies & Co.*

That from the time *Fletcher* and *Loud* issued their *fi. fa.* to August term, 1829, No. 16, to the time when *Corlies & Co.* issued their *fi. fa.* to April term, 1830, No. 28, a period elapsed more than sufficient to have enabled them to obtain the fruit of their judgment by a sale. That in connection with this delay, take 'the fact of the order to the sheriff to leave the goods in the defendants' possession, by request, and at the risque of the plaintiff, which was equal to an order to stay the proceedings, there being no household goods in the levy ; and to this add the further fact, that *Fletcher* and *Loud* did not make the slightest movement to obtain a satisfaction of their judgment, from the period of their *fi. fa.* and levy, until the 6th of April, 1830, four days after *Corlies & Co.*, had placed their *fi. fa.* in the hands of the sheriff, with orders to him, to levy on the personal property, and sell as soon as the law would allow; the presumption of fraud upon *Corlies & Co.* becomes positive, and the legal conclusion that the only object of the proceedings of *Fletcher* and *Loud*, was to obtain a security for their debt, and not satisfaction of it.

The lien of an execution levied on goods may be lost by the slightest negligence in pursuing it. The lien is not to be of indefinite duration. The law will not endure the levying of an execution on

goods, only as a security. The object of the execution must be for satisfaction, and not for security. The lien should not exist longer than may be necessary to enable the plaintiff to obtain the legitimate fruit of his judgment by sale. A levy with directions to proceed no further, can be referred to no object but the creation of a lien, which the law does not tolerate.

Retention of possession, ought to be considered a badge of fraud. *Cowden* v. *Brady*, 8 *Serg. & Rawle*, 510. *Dean* v. *Patton*, 13 *Serg. & Rawle*, 345. *Barnes* v. *Billington*, 1 *Wash.* C. C. R. 29. *Eberle* v. *Mayer*, 1 *Rawle R.* 366. *Howell* v. *Alkyn*, 2 *Rawle R.* 282. *Com.* v. *Stremback*, 3 *Rawle R.* 341. *Hickman* v. *Caldwell*, and *Black* v. *Same*, 4 *Rawle R.* 376.

These rules being applied to the facts of this case, will result in favour of *Corlies & Co.*

*Bradford* and *Chauncey* for *Fletcher* and company contended, as to the first error alleged, that the lien which they had on the real and personal property of the defendant by reason of the *fi. fa.* to August, 1829, and the levy thereon was not impaired by the alias *fi. fa.* to November term, 1829, and levying on land which was condemned, because by law the sheriff is obliged under a *fi. fa.* to levy first on the personal estate and exhaust it before the land can be levied on, and therefore as a levy on personal estate was made under the *fi. fa.*, no levy could be made on real estate, till the personal was sold, for the debt was *prima facie* settled by the levy. The levy on real estate under the *alias fi. fa.* was consequently a nullity and void. For these points they cited *Purd. Dig.* 294. *Hunt* v. *Breading*, 12 *Serg & Rawle*, 40. *Dean* v. *Patton*, 13 *Serg. & Rawle*, 346. *Wood* v. *Vanarsdale*, 3 *Rawle*, 401.

As to the remaining points alleged for error, they contended that there is no certain rule laid down as to how long goods levied on may be suffered to remain in the possession of the debtor with safety to the creditor. The cases have varied from one day to two years. As between the execution creditor and the debtor the lien remained. The only question which can arise is as to subsequent execution creditors. But here the object of delay was to benefit *Corlies & Co.* They received by our delay in selling from the use of the machinery more than three thousand eight hundred dollars: whereas *Fletcher & Co.* experienced a loss in the value of the machinery by every day's use of it.

*Reply.*

The delay did not benefit *Corlies & Co.* Their debt was reduced between the time of the levy on *Fletcher* and *Loud's* execution and theirs, but it was not by payments made from the use of the machinery, it arose from the sale of goods deposited in their hands as factors long antecedent to such levy—and such is the evidence in the cause.

The opinion of the court was delivered by

(Corlies & Co. v. Stanbridge—Fletcher & Loud v. The Same.)

SERGEANT, J.— If the plaintiff delivers an execution to the sheriff with direction not to levy at all, or not until further orders, it creates no lien on the defendant's personal property as against a creditor issuing and proceeding with a subsequent execution. *Com.* v. *Strembeck,* 3 *Rawle,* 344. The rule is the same if there is a levy accompanied with instructions to stay proceedings. *Ib. Hickman* v. *Caldwell,* 4 *Rawle,* 376. In both cases the plaintiff's object is considered to be to obtain security, not satisfaction for his debt, and the employment of an execution for this purpose is a perversion of its design, and a fraud against third persons. In the present instance, there was a levy on property left in the defendant's hands by the request and at the risque of the plaintiffs. In this disposal of the property there was no harm, because by our usage it is not necessary to the validity of the execution that the sheriff should, either by himself, or another person, keep possession, as by the English practice he is bound to do. *Com.* v. *Strembeck,* 3 *Rawle,* 344. *Watson on Sheriffs,* 173, 176. He may leave the goods in the defendant's possession at his own risk, or, if the plaintiff authorise it, at the risk of the plaintiff. *Ibid.* But still there must be a prosecution of the writ to a sale within a reasonable time. It is not necessary the sale should be before or even on the return of the writ. The sheriff may sell after the return of the writ, though out of office, and it is said, without a *venditioni exponas. Ib.* 189. But the plaintiff cannot suffer the levy to lie dormant term after term, and assert his priority only when another creditor attempts to enforce his rights. If he can, creditors may be kept at bay, the debtor permitted to retain the possession of the goods for an indefinite period, and the beneficial statutes and rules for the suppression of fraud frustrated. The great length of time which elapsed in the present case after the levy, without any step being taken by the first execution creditor, warrants the presumption, that his object was to use the execution to secure his claim, and to prevent a sale of the goods for payment of the defendant's debts—a design which the policy of the law deems fraudulent, and which renders the process void against the second execution creditor. The parol evidence abundantly manifests, that this, in fact, was the arrangement contemplated by the parties.

It is however, contended, that this case forms an exception to the general rule. And if it were shown, that *Corlies & Co.* knew of the first levy; that it was intended for their benefit by enabling the defendant to go on spinning cotton for their account; that they assented to the arrangement, and availed themselves of it, any objection to its validity would come with an ill grace from them. But the defence fails in the most important link of the chain. The evidence does not show that *Corlies & Co.* ever agreed to the arrangement between *Fletcher* and *Loud* and the defendant. The most it proves is, that they knew of the existence of the execution

(Corlies & Co. *v.* Stanbridge—Fletcher & Loud *v.* The Same.)

and levy, and received payments on account from the defendant during the interval. But there is nothing to show they agreed to the delay, or that it stood in any respect otherwise than at the plaintiffs' risque. That being the case, it is impossible to distinguish the case from others falling within the operation of the general rule.

This view of the case renders it unnecessary to examine whether the issuing of the *alias fieri facias* to November term, 1829, and levy and inquisition thereon, was not in itself an abandonment of the levy on the personal property under the *fieri facias.*

Decree reversed, and money awarded to the payment in the first instance of the debt due to *Corlies & Co.*