## Parys & Co.'s Appeal.

41  273
171  326

*Prior Executions, when and for what Cause postponed to subsequent Writs of Fieri Facias.*

1. Where the goods of a merchant levied on under an execution, were not removed, nor the store closed, but was put in the hands of a clerk at the instance of plaintiffs' attorney, with privilege to sell as usual and account for the proceeds to the sheriff, and the clerk, with defendant, did sell goods up to the sheriff's sale, keeping no account of goods sold but only of the amount of money alleged to have been taken on sales, the execution will be postponed to one subsequently issued, though the levy in the first execution was not for security only and there was no unnecessary delay in executing it.

2. It is in contravention of the law to permit the possession and control of the property of a defendant in an execution to remain after levy as before, or to sell at private sale, it being not only fraud in fact but fraud in law; and if done in pursuance of arrangements made by the execution-creditor, he will be postponed to a junior execution.

5 WR.—18

[Parys & Co.'s Appeal.]

CERTIORARI to the Common Pleas of *Lawrence county.*

This was an appeal by Parys & Co., from the decree of the court distributing the proceeds of the sheriff's sale of the personal property of David Winternitz.

The material facts of the case, as reported by the auditor, were as follows:—

In the year 1855, Winternitz and his wife lived in Clearfield, Pa., and during that year he became insolvent, and they removed. They went first to New Brighton, and after remaining there for some time, they removed to New Castle. When they left Clearfield they had no capital or means so far as the testimony discloses, except what was obtained in the following manner: Winternitz had contracted to buy a house and two lots in Clearfield, paid a part of the purchase-money, and then his interest in the premises was levied upon and sold, and bought by Regina Adler, his mother-in-law, who was residing in his family. Shortly after this, Mrs. Winternitz borrowed of one Porter $390, who, to secure himself, took a judgment for $400 against Regina Adler. Mrs. Adler subsequently conveyed the house and two lots to her daughter, Mrs. Winternitz, who has since paid the Porter judgment; $100 of the money having been delivered by David Winternitz to Porter, but receipted to his, Winternitz's, wife.

On the 16th day of January 1860, Mrs. Elizabeth Winternitz, in pursuance of the 6th section of the Act of 11th April 1848, relating to married women, gave her written consent under her hand and seal, to her husband, David Winternitz, to make and deliver a judgment-note or bond to G. Parys & Co., for the sum of $852.81, for the use of certain parties therein named. She further agreed and declared that in case an execution should issue thereon, the same might be levied of her separate estate. This instrument she duly acknowledged before the Hon. Samuel VanHorn, an associate judge of said court, to be her act and deed, and that the same was made without any coercion of her husband. On the same day David Winternitz gave his bond to G. Parys & Co., with warrant of attorney annexed, in the penal sum of $1705.62, conditioned for the payment of $852.81, to the parties therein named, and in pursuance of his wife's consent, bound her separate estate and property. Parys & Co., on the same day, entered judgment against David Winternitz, issued a *fi. fa.*, levied on three small frame buildings, leasehold, interests, and the goods and merchandise contained in the store of the defendant, of which he made an inventory, and attached it to the writ; all of which were sold by the sheriff on the 24th of the same month. On the day of sale, the buildings were all put up together, and sold in the lump to Mr. Morris, although some one present requested that they should be sold separately. The goods in the store, the greater proportion of which were pur-

chased by Mr. Morris, were sold principally by retail, and for a fair price.

When the sheriff made the levy, he did not remove the goods or close the store; but at the instance of Mr. Morris, attorney for plaintiffs, put it under the charge of John Bostwick, with directions to keep an account of the goods sold, and money made. Bostwick was on very intimate terms with Winternitz, and for near two years previous to the sale had spent a great deal, perhaps the principal part of his time, in and about his store. For a few months previous to the levy he had been to Pittsburgh, but returned in the beginning of January 1860. Mrs. Winternitz had also been to Pittsburgh, the residence of G. Parys & Co., for a few days, and returned about the same time. Bostwick kept no account of the goods he sold, but reported to the sheriff the amount of money which he alleged had been taken in. After the levy, and up to the morning of the sale, Winternitz and wife remained in the store, buying, and selling, and doing business as they had always done; and at the date of the report continued in the possession of the store, Bostwick having returned to Pittsburgh some time after the sale. Between the day of the levy and the day of the sale, there seemed to be no difference in the manner of carrying on the business, other than that Bostwick appeared to be a little more active in the management of the business than before. Winternitz and wife were both present at the sale, and while the sheriff was crying the goods they sold some trifling articles privately. They also instructed Isaac Phillips, who, as an experienced merchant, had been employed by Mr. Morris to buy the goods for G. Parys & Co., when to bid higher, and when he had bid enough; though Mr. Phillips says that he was not influenced by these instructions, but pursued his own judgment. Mrs. Winternitz always claimed to be the owner of the store in New Castle, and the business was carried on in her name.

On the evening of the 23d of January, the day previous to the sale, an *al. test. fi. fa.*, issued by Bunn & Raiguel from the Common Pleas of Clearfield county, against David Winternitz, was placed in the hands of the sheriff by Mr. Craig, attorney for the plaintiffs in the writ, with directions to levy upon and sell the same property, which the next day was sold upon the writ of G. Parys & Co. Prior to this, however, two writs of *test. fi. fa.* had been issued by the same plaintiffs, from the same place, and against the same defendant; but the officer having neglected to affix the seal of the court to the writs, they were sent back to Clearfield. After the defect had been remedied, they were again forwarded and put into the hands of the sheriff, but he refused to make a levy, alleging that Mrs. Winternitz claimed to own the store, and he would get into trouble unless he was indemni-

fied.   The indemnifying bond of Bunn & Raiguel was then pro-
cured and offered to him; but after keeping it a few days, he
refused to accept it, demanding that a freeholder of Lawrence
county should be procured to sign the bond.   It then wanted but
a few days of the return day of the writs, and they were not
served.   The *al. test. fi. fa.* was then issued, and John Euwer, of
Lawrence county, went on the bond of indemnity with Bunn &
Raiguel, and the writ was placed in the hands of the sheriff, as
before stated, on the evening of the 23d of January, and levied
on the following day, subject to the *fi. fa.* of G. Parys & Co.

The proceeds of sale were ruled into court, and J. P. Blair,
Esq., appointed auditor to distribute the money.   The claimants
were Parys & Co. and Bunn & Raiguel.   Under the facts above
stated, the auditor distributed the net proceeds of sale to Parys
& Co.

To this report exceptions were filed for Bunn & Raiguel.   The
court below, on argument, set aside that part of the auditor's
report which excluded the claim of Bunn & Raiguel, and decreed
that so much of the fund as was required to pay their debt, with
interest and costs, should be paid to them.   From which decree
Parys & Co. appealed to this court.

*Taylor & Morris*, for appellants, argued that, as there was no
intention on the part of appellants to issue their execution for
the purpose of a lien, there was no reason why it should be post-
poned: Brown's Appeal, 2 Casey 490.

That leaving the goods even in possession of the defendant
was not fraudulent in law as against subsequent execution-cre-
ditors: Eberle v. Mayer, 1 Rawle 366.   If they were within the
control of the officer, without actual possession, it is sufficient:
Wood v. Vanarsdale, 3 Rawle 406; Schuylkill County's Appeal,
5 Casey 358.   The advertisement of sheriff, the change in the
control of the store, and the closing of the store before the levy
for Bunn & Raiguel, were notice to all concerned.   An execu-
tion is not postponed unless for fraud: Howell v. Aiken, 2
Rawle 286.   Bunn & Raiguel were not in position to claim
anything until January 24th 1860, at which time the sheriff was
converting the goods after due notice.

*L. L. McGuffin*, for appellees, argued that this case was pre-
cisely within the ruling of Bingham v. Young, 10 Barr 395;
Keyser's Appeal, 1 Harris 419; Truitt, Brothers v. Ludwig, 1
Casey 145; and that when an execution-creditor procures a spe-
cial deputy to be appointed, and the goods levied on are sold by
him and the defendant at private sale until other executions are
left with the sheriff, the prior execution is postponed.

The opinion of the court was delivered, January 6th 1862, by
THOMPSON, J.—This is an appeal from a decree distributing
the proceeds of a sheriff's sale of personal property. The ap-
pellants' execution was first issued; but it was claimed that it
was postponed to a subsequent execution, because, as the auditor
found, the goods were never removed, or the store closed; but,
at the instance of the plaintiff's attorney, the store was put in
charge of one Bostwick, who had been there, as the auditor says,
" as a loafer and clerk" for the past two years, with a privilege
to sell as usual and account to the sheriff for the money received.
It appears, also, by the auditor's report, that he accordingly took
possession, and that he and the defendants in the execution sold
goods up to, and on the day of the sheriff's sale—that there was
no perceptible difference in the manner of conducting the busi-
ness of the store before and after the levy, and that no account
of the goods sold was kept, but only the amount of money
alleged to have been taken on sales, reported to the sheriff.

The question of postponement arises out of these facts alone,
for there was no proof or allegation that the levy was merely
for security, nor was there any unnecessary delay in executing
the writ, as the facts show, and no order to delay it. The sale
took place in eight days after the levy.

The court below held the appellants' execution postponed in
favour of the appellees, which came to the sheriff's hands the
day before the sale. I was inclined to doubt the propriety of
this on the argument, but an examination of recent authorities
has dispelled these doubts. Bingham v. Young, 10 Barr 395,
was ruled mainly on facts like those found in this case, and there
the execution of the party permitting such an arrangement was
postponed. So in Keyser's Appeal, 1 Harris 409, the same
doctrine was held; and again in Truitt Brothers & Co. v. Lud-
wick, 1 Casey 145. There were other elements sufficient in the
last-named case, in my opinion, to have worked a postponement
of the execution, but leaving the goods with the defendant in the
execution, and allowing him to sell as before the levy, was
regarded as material. Goods levied on should, in a reasonable
time thereafter, be taken possession of by the officer of the law,
in such a manner as to apprise everybody that they have been
taken in execution: Hood v. Vanarsdale, 3 Rawle 401. So also
does the law require the sale of property so taken to be made
publicly after public notice given: Act of 16th June 1836, § 42.
Possession and control remaining after levy as before, and pri-
vate sales are both in contravention of the law, and when they
result from arrangements made by the execution-creditor, he
will be postponed to a junior execution. Such arrangements are
so evidently for the benefit of the debtor, rather than a means
of collecting the debt according to law and the exigence of the

[Parys & Co.'s Appeal.]

writ, and they present such strong temptation to do wrong, not only in making sales, but to carry off and conceal the property, that the law forbids them altogether, not alone for fraud in fact, but as being a fraud in law.  We think the facts found by the auditor bring this case within the rule, and that the decree of the court below must be affirmed.

Decree affirmed, at the costs of the appellants.