|     |     |
| --- | --- |
| 144 | 139 |
| 171 | 327 |

|     |     |
| --- | --- |
| 144 | 139 |
| 200 | 193 |

</div>

## ASSIGNED ESTATE OF M. H. MATHEWS.

APPEALS BY J. D. ARMSTRONG, M. S. MATHEWS, CAMPBELL & DICK, ET AL., FROM THE COURT OF COMMON PLEAS OF FAYETTE COUNTY.

<div align="center">

Argued May 12, 1891—Decided October 5, 1891.*

[To be reported.]

</div>

(*a*) The personal property of an estate, assigned for the benefit of creditors, was subject to the liens of executions issued prior to the assignment. By agreement with the execution creditors and sheriff, the assignee took charge of the goods, made sale of the same as the sheriff's agent, and accounted to the sheriff for the proceeds:

1. The validity of the judgments and executions being sustained, and the entire proceeds of sale of the personal property being insufficient to satisfy the executions, unsecured creditors had no standing to except to the assignee's account for clerk hire and expenses in converting the goods into money.

2. The fact that one of the execution creditors, whose execution was left unsatisfied from the goods sold, issued an alias writ and caused a levy and sale thereon of real estate, was not to be treated as an abandonment of his right, under his former writ, to receive payment out of the proceeds of the goods sold.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

---

* Motion for a re-argument refused January 4, 1892.

Statement of Facts.

Nos. 248, 249, 250 January Term 1891, and 18 July Term 1891, Sup. Ct.; court below, No. 1 March Term 1887, C. P.

On March 9, 1888, Campbell & Dick, unsecured creditors having a claim against the assigned estate of M. H. Mathews, doing buisness as M. H. Mathews & Co., caused a citation to issue to J. D. Armstrong, assignee. Thereupon the assignee, on April 23d, filed an account charging himself with

| | |
|---|---:|
| Proceeds of personal property and collectible accounts, . . . . . . | $6,139.91 |
| Rent received from real estate . . | 151.42 |
| Proceeds of merchandise purchased . . | 2,336.32 |
| | $8,627.65 |

Credits were claimed and vouched for as follows:

| | |
|---|---:|
| 1. Merchandise purchased (11 receipts). . | $2,336.32 |
| 2. Sheriff Miller (as per agreement). . | 1,169.00 |
| 3. Sheriff Miller (as per agreement) . . | 808.50 |
| 4. Sheriff Miller (as per agreement ). . | 1,486.50 |
| 5. M. H. Mathews, clerk, 15 months, at $85, . | 1,290.00 |
| 6. Miss L. Mathews, clerk, 15 months, at $25, | 375.00 |
| 17. Sheriff Miller (as per agreement) . . | 115.59 |

The foregoing items, together with credits taken for expenses of settlement, counsel fees and accountant's commission, balanced the account.

To the said account Campbell & Dick filed exceptions alleging that the accountant was not entitled to credit for any of the items above specified. J. Ullman & Co. and Joseph Horne & Co. filed exceptions to the allowance of the items of credit numbered 2, 3, 4. Thereupon, *Mr. D. W. McDonald* was appointed auditor to hear and determine said exceptions.

On September 27, 1890, the auditor filed his report finding in substance as follows:

On January 3 and 4, 1887, upon notes with warrant of attorney dated December 31, 1886, judgments were entered against M. H. Mathews, doing business as M. H. Mathews & Co., in favor of J. D. Armstrong, for $700; Ann C. Ailes, $1,300; Martha S. Mathews, $3,457; Wilbur E. Mathews, $1,006.80; Luella A. Mathews, $240; J. D. Armstrong and I. R. Beazell, $800; Emanuel Shearer, $600; and Eliza Beazell, $500. Exe-

cutions were issued on all these judgments and placed in the hands of the sheriff on January 4th, some of them reaching the sheriff's hands before the others. On January 6th, M. H. Mathews, as M. H. Mathews & Co., made an assignment of all his estate, real and personal, to J. D. Armstrong, for the benefit of his creditors. Mr. R. P. Kennedy had charge of all the said executions, and represented the assignee after the assignment was made. On January 8th, Mr. Kennedy gave written directions to the sheriff to make a levy on said writs, and to place J. D. Armstrong, plaintiff in one of them and the defendant's assignee, in charge of the property of the defendant and assignor, the assignee to account to the sheriff for all sales of goods made and of goods, etc., in stock from date, and not to execute any of the writs until further notice. Mr. Kennedy testified that there was no design "to withhold execution of the writs to keep the property from the other creditors. The only desire was to have Armstrong sell these goods to the best advantage, and turn the money over to the sheriff, so as to reach as far as possible in paying the judgment creditors." Thereupon, the assignee, having given bond and filed an inventory and appraisement, took charge of the stock of goods assigned, employing the assignor and his daughter Luella A. Mathews as clerks, the former at $85, and the latter at $25 per month. About fifteen months were taken up in disposing of the goods, and out of the receipts from sales new goods to the amount of $2,336.32 were purchased to help sell the old. Out of said receipts, also, were paid to the execution creditors, from time to time, the sums represented by the vouchers 1, 2, 3, 4, 17, as well as the clerk hire and other expenses of managing the trust-estate.

Whether the levy upon the stock of goods was at once made as directed when the writs reached the sheriff's hands, did not clearly appear, but soon afterward part of the judgment of Wilbur E. Mathews was assigned to A. R. McCowan & Co., and on March 1, 1887, a levy was made on the assigned goods on the Wilbur E. Mathews writ, then in the sheriff's hands; and there was testimony to the effect that levies were then made upon all the writs, but the goods were suffered to remain on sale in the hands of the assignee, who made the payments for which the credits were claimed. The real estate of the assignor was sold by the sheriff. The proceeds thereof were applied to liens and none went through the assignee's hands.

Statement of Facts.

The auditor, considering Meckley's App., 102 Pa. 536; Kent's App., 87 Pa. 165; Patton's Est., 2 Pars. 104, and Hack v. Stewart, 8 Pa. 213, ruled that the agreement made by the sheriff, the assignee, and the attorney representing the execution creditors, by which the assignee was allowed to take charge of the goods assigned, to sell the same, and to account to the sheriff for the proceeds, did not have the effect of destroying the liens of the execution creditors, and that the assignee did not err in paying the money represented by said vouchers to the sheriff.   The sum represented by voucher 17, $115.59, paid to sheriff Miller on April 25, 1888, on Mrs. Martha S. Mathews' judgment, the auditor was of the opinion stood upon different ground.   All the executions issued January 4, 1887, were returnable the first Monday of March following.   The writs were marked "stayed " by Mr. Kennedy, when the assignee was ready to file his account.   On April 9, 1888, however, an alias writ of fieri facias was issued upon the judgment in favor of Mrs. Mathews, upon which writ certain real estate of the assignor was sold by the sheriff on April 30th.   The auditor, citing Missimer v. Ebersole, 87 Pa. 109, was of the opinion that this alias fieri facias and the levy under it amounted to an abandonment of the levy upon the original fieri facias, and therefore, that the payment to Mrs. Mathews' judgment of $115.59 out of the personal estate on April 25, 1888, was invalid.   The validity of the several judgments on which the executions were issued was sustained by the auditor, on the evidence submitted, but, finding that there was unnecessary delay on the part of the assignee in closing out the stock of goods, he surcharged the accountant as follows:

Voucher 5, clerk hire in excess of ten months,     $440.00
"      6, clerk hire in excess of ten months,      125.00
"     17, paid on Mrs. Mathews' judgment,     .   115.59
                                                 _____
                                                   $680.59

The costs of the audit, amounting to $327.01, the auditor recommended should be paid out of the foregoing surcharge, and he reported a distribution of the balance by a pro rata dividend among the execution and unsecured creditors.

Exceptions filed by the accountant, by Mrs. Martha S. Mathews, and by the excepting creditors, having been argued before

the court, the court, INGHRAM, P. J., on October 8, 1890, entered a decree dismissing all the exceptions, confirming the report of the auditor, and ordering distribution as recommended by said report.

Thereupon, J. D. Armstrong, the accountant, and Martha S. Mathews took the appeals to Nos. 248, 249, 250, specifying errors in not sustaining their exceptions to the auditor's sur-charges, and in not placing the costs upon the exceptants.

The excepting creditors, Campbell & Dick, J. Ullman & Co., and Joseph Horne & Co., took the appeal to No. 18, specifying errors in not sustaining their exceptions to the rulings of the auditor in refusing to sustain in full their exceptions to the credits claimed in the account filed.

*Mr. Edward Campbell* and *Mr. R. P. Kennedy*, for J. D. Armstrong and Martha S. Mathews, appellants and appellees.

*Mr. W. G. Guiler, Mr. A. D. Boyd, Mr. A. C. Hagan, Mr. G. D. Howell* and *Mr. E. H. Reppert*, for Campbell & Dick, J. Ullman & Co. and Joseph Horne & Co., appellants and appellees.

OPINION, MR. JUSTICE McCOLLUM:

These are appeals from a decree upon an account filed under an assignment for the benefit of creditors. In the account the assignee claimed credits for moneys paid to the sheriff on executions against the assignor, and for moneys expended for clerk hire and other assistance in disposing of a stock of merchandise. To these credits Campbell & Dick, J. Ullman & Co., and Joseph Horne & Co. filed exceptions, on the ground that the expenditures in the conversion of the goods were unnecessary and excessive, and that the judgments which supported the executions were collusive and fraudulent.

The fund to which the account relates was produced by a sale of personalty on which the executions were liens at the time of the assignment, and it was agreed between the sheriff, the execution creditors, and the assignee that the latter should sell the property, and pay the proceeds of it to the sheriff to apply on the executions in their order. In strict compliance with this agreement the assignee disposed of the property and ac-

counted for the moneys received for it.　The gross amount of
the sales was three thousand dollars less than the face of the
executions, and, applied in the order of lien, was not enough to
satisfy five of them with their accrued interest and costs.　In
this connection it should be mentioned that the fund realized
from these sales was all that remained for the creditors of the
assignor, as his real estate had been sold and its proceeds appro-
.priated to the mortgages and judgments according to their pri-
ority.　It should also be stated here that it was not claimed by
any creditor that the property, real or personal, was sold for less
than its value.　Upon these facts, it is clear that, if the five ex-
ecutions referred to were valid, neither the general creditors
nor the holders of subsequent executions have any standing to
contest the expenditures connected with the sale of the person-
alty.　The auditor has found that these executions represented
an actual bona-fide indebtedness of the assignor, and that there
was no fraud in the confession of the judgments which supported
them.　The court below has approved the findings, and we think
the evidence justifies them.　The agreement under which the
property was sold by the assignee was valid, and advantageous
to all concerned : Kent's App., 87 Pa. 165.　There is nothing
in the evidence to justify an inference that the executions were
issued for the mere purpose of lien.　The directions to the sher-
iff, under date of January 8, 1887, must be considered together
and in connection with the agreement.　Besides, as was said by
the present Chief Justice, in the case cited : " This is a matter,
however, of which the defendant cannot complain.　The exe-
cution in such case is good against him.　It is postponed only
as to purchasers and subsequent execution creditors.　An as-
signee for creditors is not a purchaser.　He is a mere volunteer :
Ritter v. Brendlinger, 8 P. F. S. 68; Missimer v. Ebersole, re-
ported, ante, page 109.　The assignee claims through the as-
signor.　His rights rise no higher.　The creditors claim through
the assignee.　They have his title, nothing more."

The alias fieri facias on the Martha Mathews judgment was
not an abandonment of the levy on the prior writ upon the per-
·sonalty.　The property included in that levy had been dis-
posed of when the alias writ was issued ; the proceeds of it
were appropriated by the agreement under which it was sold,
and no execution creditor excepted to the return of the sheriff,

or the account of the assignee.    It is certain that there was no intention to abandon the levy, and it is clear that the facts do not bring the case within the principle of Missimer v. Ebersole, 87 Pa. 109.    It follows from these views that the fund arising from the sale of property by the assignee belonged to the five executions mentioned.    It was paid upon them, and whether it was reduced by unnecessary or excessive expenditures in the sale was a matter which only concerned the holders of the executions.    We think, as against the parties contesting them, the assignee was entitled to the credits claimed in his account, and that the exceptions thereto should have been dismissed.    This conclusion leaves no fund from which to pay the costs of audit, and the parties who made them should bear the burden.

> The appeals of J. D. Armstrong and Martha S. Mathews are sustained, the exceptions to the assignee's account are dismissed, and said account is finally confirmed; the decree surcharging the accountant with the sum of $680.50 and distributing the same is reversed, the costs of these appeals to be paid by the appellees.    The other appeals from the decree of the court below are dismissed, at the costs of the appellants; and it is ordered that the costs of audit, to wit, $327.01, be paid by Campbell & Dick, J. Ullman & Co., and Joseph Horne & Co., exceptants.

On January 4, 1892, a motion for a re-argument was refused.