William Broadhead & Sons, and Leon Kahn *v.* Theodore Cornman, Appellant.

*Execution—Postponement of lien—Fraud—Presumption.*

While in general an instruction given by the plaintiff in an execution to the sheriff to stay the execution, or to permit the defendant to sell the goods himself and account therefor, will cause the execution to be postponed to one junior to it, yet the rule is not absolute, and does not give rise to a presumption, juris et de jure, of fraud, and if the circumstances negative any fraudulent intent, there may be cases in which the execution will retain its priority.

*Execution—Assignment for benefit of creditors—Sale by assignee.*

Where an assignee for the benefit of creditors intervenes in an execution,

and by arrangement with the sheriff and the execution creditor, is permitted to take possession and make sale of the defendant's goods, the execution creditor will not be postponed in favor of a junior execution.

Argued May 1, 1895. Appeal, No. 1, July T., 1895, by defendant, from judgment of C. P. Cumberland Co., May T., 1895, No. 151, in favor of plaintiffs, on case stated. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Case stated to determine the distribution of the proceeds of sale of personalty by constable. Before BIDDLE, P. J.

The case stated was as follows:

Theodore Cornman, the defendant, obtained a judgment by confession against S. B. Kissell, for $8,700, with interest from February, 1890, which was entered in the court of common pleas of Cumberland county to 66 May term, 1895, on which a writ of fieri facias issued to No. 8 May term, 1895, execution docket, and which was placed in the hands of the sheriff of Cumberland county on February 23, 1895, at ten o'clock and fifty minutes A. M., as appears by the sheriff's indorsement on the said writ, and a levy by virtue of this writ was immediately made on the personal property of S. B. Kissell, contained in his place of business, No. 2 East High street, Carlisle, Pa.

Broadhead & Co., one of the plaintiffs, obtained a judgment against S. B. Kissell before E. L. Shryock, a justice of the peace, February 19, 1895, for $110.50, on which an execution was issued to Frederick Hays, constable, February 25, 1895, at twelve o'clock, M. A levy was made at 12.15 P. M., of the same day, on the same property levied upon by the sheriff under Cornman's execution.

Leon Kahn, one of the above named plaintiffs, obtained a judgment against S. B. Kissell, before E. L. Shryock, justice of the peace, for $140.51, on February 6, 1895, on which an execution was issued and placed in the hands of Frederick Hays, constable, February 23, 1895, at 12 o'clock, M., and a levy was made under this execution on Kissell's goods, at his store above named, at 12.15 P. M., of the same day.

S. B. Kissell made a deed of voluntary assignment for the benefit of his creditors to Theodore Cornman, February 25, 1895. Cornman accepted the trust and took possession of the store-

room, and had an oral agreement with the sheriff that he, Cornman, should sell the goods and turn the proceeds over to the sheriff, to be applied to the execution issued on Cornman's judgment, and Cornman has proceeded to sell the goods levied upon and turn over the proceeds to the sheriff. The sheriff has not closed the store nor advertised the property levied upon for sale, and has left Cornman in charge of the goods under the agreement.

Frederick Hays, the constable, having charge of the plaintiffs' executions, had advertised the goods levied upon for sale Thursday, March 14, 1895, at 2 o'clock P. M. In consideration of this case stated and for the purpose of avoiding litigation and loss of property the plaintiffs have withdrawn the executions in the hands of Frederick Hays. It is further agreed that the plaintiffs in this case stated shall not lose any rights in the distribution of the proceeds of the sale of the goods, and shall be entitled to the same rights as if sale had been made under the executions in the hands of the constable.

Now if the court be of the opinion on the facts above stated that the plaintiffs are entitled to be paid first out of the proceeds of the sale of the goods levied upon, if the sale had been made by the constable under the said executions, then judgment to be entered against the defendant in favor of Leon Kahn for $140.50, with interest from February 6, 1895, and with the costs ($5.49) of the execution in the hands of the constable; and in favor of William Broadhead & Sons for $110.50, with interest from February 19, 1895, and costs ($4.07) of the execution in the hands of the said constable; otherwise, judgment to be entered in favor of the defendant. The costs in this case to follow the judgment, and either party may appeal to the Supreme Court, as in other cases.

The court entered judgment for plaintiffs on the case stated.

*Error assigned* was in entering judgment as above.

*J. M. Weakley, Theodore Cornman* with him, for appellant.—Where execution creditors under an agreement between themselves permit an assignee to sell the goods levied upon under their executions and turn over the proceeds to the sheriff they are entitled to the money to the exclusion of all other creditors: Kent's Appeal, 87 Pa. 165.

A senior execution creditor may consent to a sale which benefits or tends to benefit subsequent creditors whether they have liens or not, without losing the benefit of his lien. If he consents to any other action which impairs or may impair the security of other creditors he forfeits his lien.

In Freeburger's Appeal, 40 Pa. 247, the sheriff was ordered by the plaintiff and her attorney not to proceed with the writ until he got further orders, and afterward " to make a levy but not to sell," and after the levy there was an arrangement between the execution creditors and the debtor, and the keys were given up to the debtor.

In Corliss v. Stanbridge, 5 R. 286, the first execution was May 25, 1829, the second, April 2, 1830. Three days after the second execution the goods levied upon were sold on a venditioni exponas, based on the first execution.

In Miller v. Getz, 135 Pa. 558, the money was awarded to the first execution. The facts in all the cases cited must be considered as illustrating the expressions contained in the decisions.

In Landis v. Evans, 113 Pa. 332, this court, reversing the court below, awarded the money to the senior execution, although the plaintiff therein had told the sheriff not to go to the defendant's house until next day.

*F. H. Hoffer*, for appellees.—An execution issued for the purpose of creating a lien and not to sell the goods will be postponed to a subsequent fi. fa.. under which the officer having the writ in charge proceeds to levy and sell : Brewster's Practice, 1289 ; Parys & Co.'s App., 41 Pa. 273 ; Kent, Santee & Co.'s App., 87 Pa. 165.

OPINION BY MR. JUSTICE MITCHELL, October 7, 1895 :

The ground on which a senior may be postponed to a junior levy is that it is not being used in good faith for its legal purpose, but in fraud of the rights of other creditors. The rule is thus stated in Corliss v. Stanbridge, 5 R. 286, " If the plaintiff delivers an execution to the sheriff with direction not to levy at all, or not till further orders, it creates no lien on the defendant's personal property as against a creditor issuing and proceeding with a subsequent execution. The rule is the same

if there is a levy accompanied with instructions to stay proceedings. In both cases the plaintiff's object is considered to be to obtain security not satisfaction for his debt, and the employment of an execution for this purpose is a perversion of its design, and a fraud against third persons." This rule has undoubtedly been enforced with strictness. The presumptions are all against a levy under such conditions. And similarly where the sheriff has by the plaintiff's direction or with his concurrence permitted the defendant or his clerks to sell at private sale, a long line of cases might be cited in which the levy has been postponed. Of these the severest probably is Parys & Co.'s Appeal, 41 Pa. 273, where it was said by THOMPSON, C. J., "possession and control remaining after levy as before, and private sales, are both in contravention of the law, and when they result from arrangements made by the execution creditor he will be postponed to a junior execution. Such arrangements are so evidently for the benefit of the debtor, rather than a means of collecting the debt according to law and the exigence of the writ, and they present such strong temptation to do wrong, not only in making sales, but to carry off and conceal the property, that the law forbids them altogether, not alone for fraud in fact but as being a fraud in law."

But notwithstanding the generality of the language of that case, though the rule has been strictly enforced it has not been pushed beyond its reason, nor allowed to become a conclusive presumption of fraud, juris et de jure, regardless of its actual character. Thus the mere act of the sheriff in not taking manual possession and removing the goods from the custody of the defendant is not as in England a badge of fraud, and it is said by ROGERS, J., in Com. v. Stremback, 3 R. 341, though regretting the latitude to which the practice had run, "there is no certain rule how long the goods may with safety to the execution creditor be permitted to remain in the possession of the debtor. The cases have varied from one day to upwards of two years," (citing them.) In general however any direction by plaintiff to stay proceedings, etc. will postpone him. But even this rule will not always be enforced where the absence of fraudulent or illegal intent is affirmatively shown. Thus in Landis v. Evans, 113 Pa. 332, where the plaintiff had directed the sheriff not to go to defendant's house that day,

and the next day told him again that as the ladies were cleaning up he had better not go till afternoon, and in the meantime another execution had come into the sheriff's hands, it was held that the plaintiff was not postponed, the present chief justice saying in the opinion, the facts " show nothing more than a disposition on the part of the plaintiff to treat the family of defendant in the execution with due consideration by not subjecting them to unnecessary inconvenience or annoyance."

In the same line of view, having regard to the basis of the rule, and the real intent of plaintiff's action, there is a class of cases which stand a little apart, and that is where an assignee for the benefit of creditors has intervened, and by arrangement with the sheriff and the first execution creditor, has been permitted to take possession and make sale of the goods. To such cases the reasons so forcibly stated by Chief Justice THOMP-SON, supra, do not apply. The assignee is an officer of the law, subject to the supervision and control of the court, and having presumably no interest but to get the most out of the property for the benefit of those entitled by law. Such arrangements have accordingly been sustained in Kent & Co.'s Appeal, 87 Pa. 165; Mathew's Estate, 144 Pa. 139; and Leidich's Estate 161 Pa. 451.

The present case belongs to this class. The facts do not justify any suspicion that the appellant's design was merely to get security, or hinder other creditors, but on the contrary to realize as nearly as possible the full value of the goods levied on, by means of sales by the assignee, for the satisfaction first of his own execution, and the benefit, secondly, if there should be any surplus, of those entitled under the assignment. Under such arrangements, if at any time there should be ground to suspect that in fact there was a fraudulent or collusive use of the execution, or undue delay or action of any kind by the assignee to the hindrance or injury of other creditors, there is always ample power in the court having control of the execution and of the assignee, to apply a remedy, but it would be a perversion of a rule, itself founded in equity, to apply it as an unyielding formality, to a case not within the mischief it was intended to cure.

Judgment reversed, and judgment directed to be entered for the defendant in the case stated, with costs.