James H. Dunham, W. T. Buckley, Chas. H. Webb and
W. E. Webb, doing business as Dunham, Buckley &
Co., Appellants, *v.* Mary A. Rundle, Thomas Rundle,
Samuel Rundle, O. E. Reynolds and Gilmore & Duffy.

*Execution—Legitimate purpose is satisfaction of debt.*

The purpose of an execution is to obtain satisfaction not security of a
debt, and the employment of an execution for any other purpose than satis-
faction is a perversion of its design, and a fraud against third persons.

*Execution—Postponement on ground of fraud.*

The ground on which an execution may be postponed to a subsequent
levy is that the prior one is not used in good faith for its legal purpose
but in fraud of the right of others.

An agreement by a senior execution creditor which permits the posses-
sion and control of the property to remain with defendant after levy as
before, so that private sales were made in contravention of law is a fraud
in law, and will postpone such execution to the junior execution of a more
vigilant creditor.

Argued Jan. 20, 1897.   Appeal, No. 27, Jan. T., 1897, by
plaintiffs, from decree of C. P. Wyoming Co., Auditor's Report
Docket, Book 2, p. 216, sustaining exceptions to auditor's dis-
tribution, and decreeing distribution.   Before RICE, P. J., WIL-
LARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ.
Reversed.

Exception to auditor's report decreeing distribution of a fund
derived by sheriff's sale of personal property.   Before DUN-
HAM, P. J.

The facts sufficiently appear in the opinion of the Superior
Court.

*Errors assigned* were (1) in not awarding to Dunham, Buck-
ley.& Co. the sum of $785.50 on their execution, out of the pro-
ceeds of the sheriff's sale of the personal property of A. Rundle;
(2) in decreeing distribution to Mary Rundle, Thomas Rundle,
Samuel Rundle, and to Gilmore & Duffy, of so much of the
fund derived from the sheriff's sale of the property of A. Run-
dle, as was necessary to satisfy the writ of Dunham, Buckley
& Co., to wit, the sum of $785.50; (3) in holding that the exe-

cutions of Mary Rundle, Thos. Rundle, Sam'l Rundle and Gilmore & Duffy, did not lose their priority upon the fund produced by the sheriff's sale of the personal property of A. Rundle; (4) in not holding that the direction to the sheriff, by Mary Rundle, Thomas Rundle, Samuel Rundle and Gilmore & Duffy, after he had seized the goods of A. Rundle and locked up the store, to allow the store to remain open until the day of sale, did not postpone their writs to the subsequent execution of Dunham, Buckley & Co.; (5) in holding that no question of fraud arises in this case; (6) in holding that there must be an express agreement and understanding that the store should not only remain open, but that sales should be made; (7) in not holding that the withdrawal of the property from the custody of the sheriff, constituted legal fraud; (8) in holding that the store of A. Rundle was never open nor any goods sold after the Dunham, Buckley & Co. writ came into the sheriff's hands; (9) in holding that the store of A. Rundle was not reclosed by virtue of directions also received from Dunham, Buckley & Co.; (10) in holding that the revocation of the notice to allow the store to be open until the day of sale, by O. E. Reynolds and by James W. Piatt, Esq., was a revocation of the same for all who had signed the notice to allow it to be reopened; (11) in holding that there was no evidence that Mary A. Rundle knew that sales were made after the store had been reopened; (12) in not holding that in a contest between Mary A. Rundle (who is the wife of A. Rundle), and other execution creditors of her said husband, over a fund produced by a sheriff's sale of the husband's property, that she was bound to prove the bona fides of her judgment.

*W. E. Little* and *Charles H. Welles*, with them *C. A. Little,* for appellants.—The appellees' executions had priority, but that priority was lost by their own conduct. The control and direction of the writ was wantonly taken out of the hands of the sheriff: Keyser's Appeal, 13 Pa. 409; Com. v. Contner, 18 Pa. 439.

Possession and control remaining after levy as before, and private sales are both in contravention of law: Parys & Co.'s Appeal, 41 Pa. 273.

A joint possession by the defendant with the sheriff's deputy

is not sufficient to preserve the priority of execution : Bingham v. Young, 10 Pa. 395.

Whether fraud in fact exists or not, the law stamps it as fraud, because the tendency is to invite fraud, and hence it is against public policy : Pierce v. Evans, 61 Pa. 415.

*E. J. Jordan* and *A. A. Vosburg,* with them *W. S. Hulslander,* for appellees.—The appellees did nothing which would postpone their rights. The mere fact that the store was allowed to remain open will not postpone a writ in the absence of an intent to use the writ as a security : Keyser's Appeal, 13 Pa. 409; Landis v. Evans, 113 Pa. 332; Broadhead v. Cornman, 171 Pa. 322.

It cannot be presumed that Mary A. Rundle knew of the private sales : Bears' Est., 60 Pa. 430.

There must be an express assent to such sales, or the writ is not postponed : Parys & Co.'s Appeal, 41 Pa. 273.

Even in such case it is not a conclusive presumption of fraud : Broadhead v. Cornman, 171 Pa. 322.

OPINION BY ORLADY, J., March 17, 1897 :

On April 12, 1895, E. O. Reynolds issued an execution against A. Rundle, and the sheriff by virtue thereof levied upon and took under execution a stock of general merchandise owned by the defendant. On April 18, 1895, the sheriff received two writs of testatum fieri facias from Lackawanna county in one of which Thomas Rundle was plaintiff, and the other in favor of Samuel Rundle, which writs were delivered to him at the same time as a fieri facias in favor of Mrs. Mary A. Rundle, the wife of the defendant. On April 19, 1895, a fieri facias in favor of Gilmore & Duffy was issued and the day following one in favor of James W. Piatt, trustee, came to the sheriff's hands. These executions were followed on April 29 by one in favor of Dunham, Buckley & Co., the appellants herein.

In the building in which the property levied upon was situated, Mrs. Mary A. Rundle, the plaintiff in the fourth writ above mentioned operated a millinery store, access to which was had only through the store room used by her husband. When the levy was made by the sheriff on the first writ, the sheriff closed the store and deposited the key with the deputy " to see to the

goods, to watch the store on account of fire and burglars, to watch the stock," the effect of which was to prevent access to that part of the building used by Mary A. Rundle. The defendant then requested of the sheriff that some arrangement be made by which his wife could have access to her millinery goods, but was informed that "unless some arrangement was made with the creditors who had the writs," he would keep the store closed. During the two following days the store remained closed, and the defendant secured a notice as follows: "To sheriff Knapp of Wyoming county: You are hereby notified that you may allow the store of A. Rundle, upon the goods in which you have made a levy, to remain open, without risk to yourself, until the date of sale, April 29, 1895," signed by the counsel of execution plaintiffs, upon the understanding that if any executions were subsequently issued against him, or were likely to be issued, the notice should be revoked, and the sheriff should at once close the store under all the writs in his hands.

This paper was left at the sheriff's office in the absence of that officer, but he was not made acquainted with the condition under which the signature was secured, and in accordance with its provisions he permitted the defendant to open the store.

The purpose of the execution creditors in assenting to the store being kept open was to permit access to that part of the building in which Mrs. Rundle conducted her millinery store. Without the knowledge of any of the parties interested except his wife, the defendant, from April 24th to April 30th inclusive, sold at private sale of the goods under levy, and after the sale by the sheriff, accounted to that officer by paying him $42.61, as the net receipts of the sales made by him.

The appellants secured their judgment on April 29th and immediately before their execution was placed in the hands of the sheriff a notice as follows was given: "To Frank Knapp, sheriff: Judgment and execution being taken by Dunham, Buckley & Co. v. A. Rundle, putting matters in different shape, you are notified to proceed and close up store of A. Rundle, forthwith. I represent only the one. James W. Piatt, per Jos. Wood Piatt, attorney." "To the sheriff: You will obey the same as to my writ, O. E. Reynolds."

The sum realized by the sheriff $2,906.61, and distributed by an auditor to labor claims, costs and executions, and for reasons

given in his report, the writ of Mary A. Rundle was postponed to the one of Dunham, Buckley & Co. Exceptions were filed to this report, and after argument the learned judge below changed the distribution so as to give the executions of the three Rundles precedence to that of Dunham, Buckley & Co. The principal reason governing the action of the court in this was " two of these execution creditors did separately revoke the agreement to open the store, before the Dunham, Buckley & Co. execution was received by the sheriff, at a time when no other persons had acquired any rights in the property, as no other fi. fas. were in the sheriff's hands then; and we do not see why they should not be held to have revoked the same for all; and when they directed the sheriff to close the store upon their writs, it carried it to all writs in his hands." " It required the consent of each and every one of the execution creditors of A. Rundle, to enable the sheriff to allow the store to remain open, but the direction of any one of these creditors closed the store as effectually as though all joined in such direction. We think there is a vast difference between agreements of this kind to allow a store to remain open, and agreements not to levy or directions not to levy, where it requires some further direction from the plaintiffs to enable the officer to act upon the writs."

Under the report of the auditor, the parties affected were Mary A. Rundle and Dunham, Buckley & Co., as her writ was postponed to all others, and the last execution took the money otherwise due her writ. This distribution was based on the finding of fact that she assented to the private sales made by her husband, and that " if Mrs. Rundle permitted that to be done, which would postpone the writ of her fellows in the agreement, she was neglecting a duty she owed to them, and it was negligence of a most serious character, if indeed it did not constitute actual fraud. If she understood that the store was to be kept open solely for her convenience, then by not imparting to others her knowledge of what was transpiring in the store, she was imperiling their writs as well as her own."

In this case we have the auditor and the learned court below drawing opposite conclusions of fact and of law from the testimony and decisions; and we feel that the legal deductions of the auditor are more in conformity with well established rules,

as it must .be borne in mind that the rights of the parties to this contest are to be determined as between the Mrs. Rundle and the Dunham, Buckley & Co. writs, they being the only parties before us on this appeal.   On April 20th, all executions were secured by a levy on the property of the defendant, and his store locked up.   When the defendant secured in writing the consent of the execution plaintiffs that the sheriff "may allow the store of A. Rundle, upon the goods in which you have made a levy, to remain open without risk to yourself until the day of sale April 29th, 1895," Mary A. Rundle, the wife of defendant was his largest creditor; and the reason urged to have the store reopened was purely a personal one to her.   The written notice to the sheriff did not contemplate any interference with the goods under levy, as there is no evidence that any of the other execution plaintiffs knew of such interference with the property; the wife under these circumstances made her husband her agent in securing the indulgence of his other creditors to permit the store room to remain open without risk to the sheriff, and it was her bounden duty not only to exercise perfect good faith, but vigilance in seeing that the goods under levy were kept intact not only for her own writ, but for the other assenting creditors and for any others who would be interested on the day of sale.   She could not accomplish her purpose through their favor and so use their consent as to greatly lessen the stock of goods, either through her indifference or by her consent in permitting private sales to be made through six days.   The statement furnished by defendant to the sheriff shows only the net receipts, without reference to how the amount of the gross sales as made by him was lessened to determine the amount paid.   Through the kindness of the execution creditors the property was practically left under the control of the defendant, who conducted private sales from the store, while his wife, as his largest creditor, was in and out of the store "the same as anyone else when the store was open."

The testimony pointed so strongly to her assent to the private sales that her explanation was certainly necessary to relieve her of the charge of bad faith.   Instead of relieving herself of this imputation, when it was sought to show her knowledge of the way the business was done, under the notice to reopen, it was met by the objection of being irrelevant and

immaterial. The evidence fails to indicate collusion of the other plaintiffs for the purpose of hindering or delaying creditors but as plainly shows that Mrs. Rundle knew, or by reason of her relation to the property and its location should have known that private sales were being made by her husband; and so knowing, or bound to take notice, it was her duty to inform the others who had joined in the notice permitting the store to remain open, of the defendants' treatment of the goods. The law does not favor an execution for the mere purposes of lien. The ground on which an execution may be postponed to a subsequent levy is that the prior one is not used in good faith for its legal purpose, but in fraud of the rights of the other creditors. The law is thus stated in Corlies v. Stanbridge, 5 R. 286; "If the plaintiff delivers an execution to the sheriff with direction not to levy at all or not until further orders, it creates no lien upon the defendant's personal property as against a creditor issuing or proceeding with a subsequent execution. The rule is the same if there is a levy accompanied with instructions to stay proceedings. In both cases the plaintiff's object is considered to be to obtain security, not satisfaction for his debt, and the employment of an execution for this purpose is a perversion of its design and a fraud against third persons:" Broadhead v. Cornman, 171 Pa. 322.

In this case we have the possession and control of the property remaining after levy as before; private sales made in contravention of law under an arrangement with the execution plaintiff and carried on in her presence if not under her supervision; a serious loss made possible if not occasioned by her, and she must bear it rather than the subsequent vigilant creditor. As was said in Parys & Co's. Appeal, 41 Pa. 273, of such cases, "They present such a strong temptation to do wrong not only in making sales but to carry off and conceal the property, that the law forbids them altogether, not alone for fraud in fact but as being a fraud in law:" Pierce v. Evans, 61 Pa. 415.

The first writ in the hands of the sheriff was that of E. O. Reynolds, and all creditors save the appellant, consented that James W. Piatt, trustee, should take precedence to the three Rundle writs. The fact that the counsel representing the Reynolds and Piatt writs gave notice to the sheriff to proceed on their writs cannot be taken advantage of by the subsequent

creditors, as the notice was to affect these writs separately, and they could withdraw from the arrangement of April 20th at any time, if doing so did not give them an unfair advantage over the others; and as the Gilmore & Duffy writ is paid in full by reason of the fraud in law of Mrs. Rundle it is not necessary to pass upon the effect of the three Rundles agreeing that the Piatt writ should take precedence to theirs; whether that agreement did not by operation of law, place ahead of them all writs which preceded in lien that of Piatt, trustee.

As the controversy over this distribution is narrowed to the executions of Mary A. Rundle and Dunham, Buckley & Co., we feel that her conduct during the time her husband's store was opened for her convenience was such as to deprive her execution of its place as against Dunham, Buckley & Co.

The decree of the court below is reversed and the schedule of distribution as made by the auditor reinstated and affirmed. Costs to be paid by the appellees.