## In re THACKARA MFG. CO.

(District Court, E. D. Pennsylvania.   August 21, 1905.)

No. 2,103.

BANKRUPTCY—PRIORITY OF PAYMENT—LEVY OF EXECUTION.

A judgment creditor of an insolvent corporation, who, after the issu-
ance and levy of an execution, had the same held by the sheriff for several
months to obtain the advantages of the security, while payments were be-
ing made from time to time by the debtor, lost the lien of the levy
as against other creditors under the law of Pennsylvania, and on the
bankruptcy of the corporation, more than four months after the levy,
such creditor is not entitled to priority of payment from the proceeds
of the property levied on.

In Bankruptcy.   On certificate from referee.

Hopple & Buckman, for trustee.

Joseph W. Shannon, for claimant.

J. B. McPHERSON, District Judge.   On February 18, 1903, the
bankrupt confessed judgment to the claimant, the Pittsburg Steel

Shafting Company, for $4,153.91, and on the same day an execution was issued thereon. Soon afterward an agreement was entered into between the claimant and the bankrupt, by which it was provided that the execution should be stayed, and that the bankrupt should pay $50 per week and maintain its stock and manufacturing plant without impairment, except as changes might be made in the course of its regular and legitimate business. If default in the weekly payments should be made, the claimant was to have the right to issue a second writ. After $2,800 had been paid under this agreement, default was made, and on February 23, 1904, the claimant issued an alias execution. Other writs in favor of other creditors were in the sheriff's hands at the same time, and the bankrupt also owed a large amount for rent and wages; these items being preferred claims, which would be entitled to priority of payment out of the proceeds of a sheriff's sale. For these and other reasons the financial condition of the bankrupt was so unsatisfactory, and the likelihood was so great that the claimant would recover nothing upon its execution if a sale should be forced, that the claimant never instructed the sheriff to proceed. On the contrary, after a formal levy had been made, the claimant's attorney directed that the writ should be held without further action, and that the sheriff's watchman, who had been on the premises for one day, should be withdrawn. He refused to stay the writ formally, or withdraw the levy, but he agreed not to proceed if payments should be made from time to time. Accordingly the bankrupt paid him, at irregular intervals, about $750, and nothing further was done upon the execution. In December, 1904, the court of common pleas of Philadelphia county appointed a receiver for the bankrupt, and on the 3d day of the next month an adjudication was entered in this court. The goods that had been levied on were sold by a receiver in bankruptcy, and upon the fund thus produced the claimant asserts a right to payment in full, on the ground that a lien had been acquired on the property by the issuing of the alias fi. fa. in February, more than four months before the filing of the petition.

If the lien thus obtained, which was valid in its inception, continued to be valid as against other creditors, it is no doubt protected by the bankrupt act, and the claim must be allowed; but the referee (Richard S. Hunter, Esq.) held it to be invalid under the law of Pennsylvania, by which law it must be judged, and refused to award priority for the unpaid balance of the debt. This ruling is now before the court on review, and its correctness has been vigorously attacked. I am of opinion, however, that the referee was right, and I agree with the reasons that he has given for his conclusion in the following paragraphs from his report:

"The question raised in the present case is whether such a lien, which would be protected, if duly prosecuted, has been abandoned or has become vacated through the action of the lien creditor in issuing an execution, and allowing the same to be retained by the sheriff over a long period of time, under an arrangement with the debtor by which the greater part of the indebtedness was gradually liquidated; subsequent executions being in several cases paid in full.

"The law on this subject is settled in Pennsylvania by a number of recorded decisions (see Parys & Company's Appeal, 41 Pa. 273, 80 Am. Dec. 615; Kent, Santee & Company's Appeal, 87 Pa. 165; Broadhead v. Cornman, 171 Pa. 322, 33 Atl. 360.) The law is thus stated in Corlies v. Stanbridge, 5 Rawle, 286: 'If the plaintiff delivers an execution to the sheriff with direction not to levy at all, or not till further orders, it creates no lien on the defendant's personal property as against a creditor issuing and proceeding with a subsequent execution. The rule is the same if there is a levy accompanied with instructions to stay proceedings. In both cases the plaintiff's object is considered to be to obtain security, not satisfaction, for his debt, and the employment of an execution for this purpose is a perversion of its design, and a fraud against third persons.'

"There are certain exceptions to this main doctrine, set forth in Kent & Company's Appeal, supra, and Broadhead v. Cornman, supra: Where the absence of illegal intent is affirmatively shown; where the execution was held up for a day as a matter of consideration for the debtor's family; òr where an assignee has been permitted to take possession.

"The present case is not within these exceptions. There was a distinct intention to use the execution as a security for the debt, and as a matter of fact the execution creditor received the greater part of the indebtedness by means of this execution. It would be absolutely inequitable to allow him now to prove for the remainder as a claim having priority.

"This becomes obvious upon consideration of the admitted facts. There was a large indebtedness, prior to the judgment claim, for rent and wages, and a well-founded doubt in the mind of the execution creditor whether upon a sale he would receive any part of his claim. The company was notoriously insolvent, and in the exercise of his best judgment Mr. Shannon for his clients made the arrangement in evidence. In this arrangement there was no fraud in the usual sense of the word, but, on the contrary, the exercise of good judgment on behalf of his client. But, none the less, was the stay of execution illegal as regards subsequent creditors.

"The referee finds that the claim of $1,542.53 of the Pittsburg Steel Shafting Company is a debt of the bankrupt company not having priority."

A consideration of the evidence satisfies me that the facts bring the case within the operation of the rule laid down in Corlies v. Stanbridge, supra. The claimant did not intend to proceed with the execution, but was holding it merely for the advantage derived from the technical lien, which enabled him to put pressure on the bankrupt and thereby compel periodical payments on account. This was probably good business judgment, but it vitiated the lien of the execution, so far as other creditors were concerned.

The decision of the referee is affirmed.